# LENORA LUND v. EMMETT OLSON AND OTHERS.[1]

January 2, 1931.

Nos. 28,167, 28,169.

[1]Reported in 234 N. W. 310.

*Leo J. Seifert,* for appellant Fox.

*Merriam & Wright* and *McCune & McCune,* for appellant Ehlers.

*Tautges, Wilder & McDonald,* for respondent.

HILTON, J.

Defendants Fox and Ehlers each appeal from the denial of an alternative motion for judgment notwithstanding the verdict or for a new trial.

This is a personal injury action originally brought against Emmett Olson, Dorothy Fox (hereinafter referred to as Fox), Einar A. Lund, and Fred Ehlers; separate counsel appeared for Olson and Fox and for Lund and Ehlers. At the opening of the trial defendant Einar A. Lund (father of Lenora Lund)· was granted judgment on the pleadings, and the trial proceeded against the other three defendants.

At the close of the evidence a verdict was directed in favor of Emmett Olson on the ground that Fox was not in his employ at the time of the collision and that he was not responsible for her actions. A verdict for $20,000 was returned against Fox and Ehlers; each perfected an appeal.

The accident in which the injuries were sustained occurred April 6, 1929, a clear, sunshiny day, between 10:30 and 11 o'clock a. m. A· Buick automobile driven by Fox and owned by Olson collided with an inclosed Ford truck driven by Ehlers and owned by Lund. The collision occurred on the asphalt paved intersection of Park and Webster streets in the city of Fairmont. Both streets were dry. The claim of plaintiff was that the drivers of both automobiles were negligent and that the negligence of each contributed to and caused the collision and the resulting injuries to her. Each appellant claimed to be free from negligence and by answer alleged negligence on the part of the other driver.

Lenora Lund (hereinafter referred to as Lenora) was nine years of age and appeared by her guardian ad litem. Appellant Ehlers was also a minor and appeared by a guardian ad litem.

The assignments of error of each appellant, generally speaking, are that the verdict was not justified by the evidence and was contrary to law; that the verdict was excessive and appeared to have been given under the influence of passion and prejudice; that the court erred in admitting in evidence exhibit F (a bottle containing brain substance and bone). Fox also assigns as error the admission of plaintiff's exhibit G (hospital chart) and Ehlers particularly claims that the evidence did not establish actionable negligence on his part.

■ We first dispose of the question as to the negligence of defendants. On the record in this case it is not necessary to define the legal rights and duties of the two defendants while in the intersection, nor will a recital of the evidence serve any useful purpose. Lack of negligence on the part of Fox could not be seriously asserted. The testimony of Ehlers himself with that of other witnesses made his negligence a clear question of fact for the jury. Its conclusion that both defendants were negligent had ample support and must stand.

■ Lenora and two younger girls were riding in the inclosed rear part of the Ford truck. Lenora was thrown from that inclosure to a point quite a distance from where the collision occurred, landing on her head on the pavement, sidewalk, or curb. Unconscious, she was taken to a hospital, remaining unconscious or semi-conscious for two weeks. She sustained serious injuries. One of them was the crushing of her skull on the right upper forward portion thereof, from which a portion of the brain exuded. There was an opening in the skull approximately two and one-half inches by two inches in size.

From the opening in her head there escaped or was removed about four ounces of brain matter; eight pieces of splintered bone were taken from the brain. A portion of such lost brain matter and all those pieces of bone were placed in a small bottle by Dr. Blanchard, one of the three operating surgeons. When on the stand as a witness for plaintiff he was interrogated as to the number of bone pieces removed. He stated first that "there were prob-

ably four or five. I do not know." He was asked if he still had the pieces of bone, and he produced a small bottle containing liquid, brain substance, and pieces of bone. It was examined by counsel for both sides in the presence of the court, the jury, and the occupants of the court room.

Dr. Blanchard examined the bottle and stated that there were at least five pieces of bone therein. He later found seven and finally located eight. He testified that the bone and brain substances in the bottle were removed by him from the brain; that some of the lost brain substance had escaped, being crushed into liquid; that two "solid" pieces therein had shrunk and were only about one-half the size as when fresh. He gave further details relative to the operation and her condition. No objections were made while the foregoing testimony was given and the bottle exhibited.

The exhibit was then marked for identification and offered in evidence, at which time both appellants objected to its admission on the ground that no foundation had been laid and that it was incompetent, irrelevant and immaterial. It was not objected to as prejudicial. The objection was overruled and the exhibit received.

It is claimed by plaintiff that the offering of the exhibit was for the purpose of establishing the number of bone pieces removed from the brain, the witness not being able to testify definitely from memory in that regard. The pieces of bone in the bottle were not all of the skull that was fractured by the impact. The bottle was a small one, and the exhibit was not of the gruesome nature that counsel for appellants suggest. Considering what had transpired, the exhibition of the bottle, the purpose for which it was offered, and the testimony elicited without objection, we are of the opinion that the trial court was not in error in admitting it in evidence.

A case cited by appellants (Evans v. C. M. & St. P. Ry. Co. 133 Minn. 293, 295, 158 N. W. 335, 336) wherein it was held error to admit in evidence a preserved, amputated hand when it was "offered in evidence for the purpose of showing damages and pain and suffering," is not here in point. The fact that the hand had been re-

moved was evidenced by the stump of plaintiff's arm, which plainly proved the loss of the hand; the admitted exhibit was not necessary in establishing that fact, nor was it necessary in proving the amount of plaintiff's pain and suffering. That case differs radically from the one at bar. Here an examination of the scar covering the hole in the head would not disclose the number of bone pieces removed from the brain. In this case the answers interposed by the defendants put in issue the extent of the injuries; the burden of proving the same was on plaintiff.

Other cases cited by appellants are readily distinguishable. Cases holding it error to admit in evidence exhibits introduced to excite a feeling of pity and commiseration on the part of the jury and not to enlighten or aid it in settling a disputed question of fact are not helpful.

The trial court in its memorandum reached the conclusion that it was not prejudicial error to receive the bottle and its contents in evidence. With this we agree.

■ A regular hospital chart was kept in which appeared a record of Lenora's hospitalization. It (exhibit G) was offered in evidence following a lengthy examination of Dr. Blanchard, in which among other things he identified it as the original hospital chart made and kept in Lenora's case. He testified that it was a record of what had transpired during the various hours of each day; that it contained statements as to the temperature, pulse, and other incidental matters relative to the patient's condition and treatment; that it was kept by the two named special nurses in charge, each making her own entries (the surgical notations being made by the surgical nurse as dictated by an operating surgeon and signed by him) in the usual course of the hospital business; and that those making the entries were authorized to do so. He further testified that such a hospital record was made for every patient in the hospital; that the entries therein were true and correct. There was no objection to any of this evidence.

The chart was admitted in evidence over the objection of defendant Fox that no proper foundation had been laid and that it was a self-serving declaration on the part of plaintiff and was hearsay.

The learned trial court refers in its memorandum to the case of Manning v. C. G. W. R. Co. 135 Minn. 229, 160 N. W. 787, in support of the proposition that the hospital clinical chart was probably competent evidence. (Defendant Ehlers did not object to its reception in evidence.) The trial court expressed its opinion by stating: "It is doubtful if there is anything in the exhibit not covered by the testimony of witnesses." Under all the circumstances we think the chart was properly admitted in evidence. (See also Tiedt v. Larson, 174 Minn. 558, 219 N. W. 905.) To say the least appellants were not prejudiced thereby.

■ "A party to the record of any civil action * * * may be examined by the adverse party as if under cross-examination, subject to the rules applicable to the examination of other witnesses. The party calling such adverse witness shall not be bound by his testimony, and the testimony given by such witness may be rebutted by the party calling him for such examination by other evidence. Such witness, when so called, may be examined by his own counsel, but only as to the matters testified to on such examination." G. S. 1923 (2 Mason, 1927) § 9816.

Defendant Ehlers was called for cross-examination under the statute by plaintiff's attorney. After this cross-examination was completed the attorney for Fox cross-examined the witness, but was finally stopped on objection by the attorney for Ehlers. The attorney for Lenora stated that he had no objection to such cross-examination of the defendant witness by the other defendant. The court stated that the attorney for the witness (Ehlers) had a right to redirect examination of him and that the attorney for Fox did not have the right to cross-examine him at that stage of the proceedings. The court was then inclined to the view that the defendants were not adverse parties, evidently having in mind the cases of Merrill v. St. Paul City Ry. Co. 170 Minn. 332, 212 N. W. 533, and McDonough v. City of St. Paul, 179 Minn. 553, 230 N. W. 89.

The specific objection interposed by attorney for Ehlers to the examination of his client by counsel for the defendants Olson and

Fox was "at the present state of the record, as not proper redirect under the statute." The objection was sustained and exception noted. Again counsel for plaintiff stated that he had no objection 'to the examination of the witness in any form by any of the defendants.

After plaintiff had rested and while evidence for defendants was being presented (a witness Henry being on the stand) the court itself brought up the matter and announced:

"Now, I shall make a ruling at this time that I mentioned before, that it is very apparent that the interests of the two groups of defendants, Olson and Fox on one side, and Ehlers on the other, are adverse, and each may have an opportunity to cross-examine the witnesses of the other; the attorneys for Ehlers may cross-examine the witnesses called by the defendants Olson and Fox; and the attorney for Olson and Fox may cross-examine witnesses called by Ehlers; and of course the plaintiff has the right to cross-examination of any witness called by any defendant."

Afterward defendant Fox was called by her attorney for examination. At the conclusion of that examination there was cross-examination by attorney for respondent, several redirect examinations by her attorney, and several more recross-examinations by attorney for respondent. Attorney for Ehlers did not then make an attempt to cross-examine her although permission had been granted therefor; nor did he call her for cross-examination under the statute.

If the court's ruling in the first instance, that there could be no such cross-examination, was proper, defendant has no ground for complaint. If such ruling was wrong the court later changed it, and defendant Ehlers did not avail himself of a privilege that had been offered him. In either event his present complaint is groundless.

■ The next question is as to the claim of both defendants that the verdict is excessive and was apparently given under the influence of passion and prejudice. The trial court in his memorandum states:

"The damages are large. But the injuries are severe. No one claims otherwise. Plaintiff suffered several minor injuries, from which she has recovered. A serious shock was sustained. She was in the hospital for 50 days. She underwent a serious operation and suffered great pain. She was artificially fed for a number of days. Her skull is cracked with irregular seams extending from the top of the skull to the ear on each side. A comparatively large part of the frontal bone is gone, leaving a soft spot two and one-half by two inches in size. This spot will remain soft. Bone will never form in it or protect it. A fluid exudes from it. It has a small horn-like projection. It is unsightly, a permanent scar and a permanent menace. The pulsation of the brain can be seen and felt in the scar. Fragments of bone were driven into the brain, and there has been a considerable amount of brain substance removed. The injuries have made her sleeping irregular and troubled. She is now somewhat irritable and nervous. Her injuries are real and serious.

"The injuries here detailed appear indisputably.

"There is no absolute rule by which such damages are determined. In the first instance they are for the jury. It is peculiarly within the jury's province to fix the amount of damages. Damages thus found by a jury should be allowed to stand, unless the amount is so exorbitant as to shock the senses. The amount found by the jury in this case is large, but not so large, in my judgment, as to require interference by the court.   *   *   *   I leave the jury's verdict undisturbed."

In addition to recitals in the court's memorandum, there was evidence further showing Lenora's condition and treatment, which the jury had a right to believe and weigh. She was given a serum for gas bacillus; tetanus serum to avoid tetanus infection; pneumococcic antigen because of her weakened condition, there being danger of pneumonia if anaesthetics were given as there were symptoms of lung congestion. Several of her upper teeth were broken and chipped; one of her lower teeth was injured to such an extent that it had to be extracted. Prior to the accident she was in perfect health;

212

there is now a difference in her mental and physical condition. She continues to have headaches and severe vomiting spells and at times is hysterical and excited; there is a permanency to her headaches. Her memory is impaired, and her temper and temperament are different. She is not as active as before the accident and has neither the courage nor the ability to do or explain things as she did before. Hair will never grow on the area involved. She has a permanent injury to her brain.

The verdict had the approval of the eminently fair and conservative trial court; we agree with the conclusion reached. There is no reason for thinking that the verdict was rendered under the influence of passion and prejudice. Whenever during the trial it became necessary for the court to exercise its judicial discretion, it was properly exercised. The charge of the court was satisfactory to both sides; no objections were taken.

Careful consideration has been given to all of the points advanced by appellants, the arguments made thereon in the briefs and orally presented; no ground for reversal is found.

Orders affirmed.

