## EDMUND SCHMIDT v. PETER RIEMENSCHNEIDER AND ANOTHER.[1]

March 13, 1936.

No. 30,764.

[1]Reported in 265 N. W. 816.

*William H. Freeman,* for appellants.
*Kennedy & Kennedy,* for respondent.

LORING, JUSTICE.

This is an appeal from an order denying defendants' motion for a new trial after verdict in favor of plaintiff.

Plaintiff, while pushing a wheelbarrow easterly along the southerly edge of Hastings avenue in St. Paul, was struck in the head by a swinging gate attached to the right side of defendants' truck when the truck, moving in the same direction, passed him.

At the trial, in order to substantiate his claim that he had sustained a fractured skull as a result of the accident, plaintiff, after introducing several X-ray pictures, offered in evidence a clinical history sheet of the hospital where he received treatment for his injury. It was received over objection. Attached to and made a part of the chart was a roentgenologist's report:

"ANCKER HOSPITAL Dept. of Roentgenology A-46683
"Name Edmund Schmidt    *    *    *
"On account of          poss. fract.
"Report 11/19/34—A sharply defined line beginning in the superior portion in the squamous portion of the temporal bone on the right, posteriorly, and extending anteriorly and downwardly into the base, evidently to end in the middle fossa, is evidently due to a linear skull fracture without evidence of depression. Another sharp line seen in the region of the occipital-parietal suture on the right,

and extending to the posterior-superior mastoid cells, also suggests a linear fracture without depression. Left lateral view of the skull shows a round calcified area about 1 cm. in diameter apparently lying laterally, probably in the dura, in the region of squamous portion of the temporal bone.

"JRA"

The most serious question here presented is whether the chart was properly admitted. The plaintiff contends that by stipulation the defendants consented to the introduction of the chart. Before the exhibit was offered and while a Dr. Bank, plaintiff's witness, was testifying on cross-examination, the following took place:

Q. [Mr. Freeman, defendants' attorney] "Do you have the hospital chart there, Doctor?

A. "I have.

Mr. Freeman: "Can I see that? For the purpose of saving time I wonder if it could be agreed that these records may be kept here for the use of either side?

Mr. Kennedy: "I would like to have them.

Mr. Freeman: "That is all right with us.

The Court: "Very well."

On recross-examination of the same witness, defendants' attorney asked:

Q. "You have referred to the records—

A. "From the chart he was conscious all the time.

Q. "No indication of any unconsciousness or anything of that kind?

        \*     \*     \*     \*

Q. "So that as far as your hospital records are concerned there is no record of any unconsciousness?"

A doctor who testified for the defendants stated that he got his information about the fracture from the hospital chart. Later, when the chart was offered, defendants objected to its introduction on the ground that it was hearsay, self-serving, and not within the stipulation of counsel. The trial court held that the language first

above quoted amounted to a stipulated consent to its introduction. In the light of the use made of the chart and the circumstances attending and preceding the offer, the trial court was justified in finding that there was an agreement that no further foundation was necessary for the admission of the chart. It had been referred to by the parties to such an extent that the court was justified in allowing its introduction. The sufficiency of evidence to establish a foundation is discretionary with the trial court, and his decision will not be reversed if there is any evidence fairly tending to support it. McManus v. Nichols-Chisholm Lbr. Co. 109 Minn. 355, 123 N. W. 1080. We therefore have a hospital chart sufficiently verified and with sufficient foundation laid for its introduction if otherwise admissible.

■ This court has intimated that hospital records may be competent evidence and admissible against an objection of hearsay. Lund v. Olson, 182 Minn. 204, 234 N. W. 310, 75 A. L. R. 371, 382; Manning v. C. G. W. R. Co. 135 Minn. 229, 160 N. W. 787. An extensive note to the Lund case in 75 A. L. R. 378, sets out many cases in which such records have been received.

"There is as much reason for verity in such records as in books of account. In fact, there is more reason for verity, because dishonesty might prompt false entries in books of account, while there is no reason why a physician making a record to aid him in treating a patient should consciously make a misstatement therein. We see no reason why such records, when properly identified, should not be admissible as to all matters proper for inclusion in such character of record." Adler v. N. Y. L. Ins. Co. (C. C. A.) 33 F. (2d) 827, 832."

A hospital attendant's professional reputation depends in no small measure on his ability accurately to keep such records. A physician's or surgeon's success in many instances may depend largely upon the accuracy of these records. We are of the opinion that the record here in question was competent and admissible.

■ The verdict was for $10,000. Defendants contend that it was excessive. It appears that plaintiff was a man 37 years old and at

the time of the accident weighed 174 pounds. He was regularly employed and in good health. Since the accident he has had severe headaches, dizzy spells, loss of memory, and has lost weight. He attempted to go back to work as a watchman but was forced to give that up and return to his bed because of head pains and dizziness. Other attempts to do light work met with the same results. Doctors' examinations showed that he walked with an ataxic gait, was confused and forgetful. He cried a good deal. A Romberg test was positive. There was medical opinion that he was totally and permanently disabled. Under these circumstances the verdict is not excessive.

Defendants claim that plaintiff could not have sustained a fracture on the right side of his skull because the truck was passing plaintiff on his left side and the gate must have struck him either in the back of the head or on the left side; that in order to have sustained a fracture as here claimed he must have received a direct blow at the spot where the fracture occurred, and consequently, since it is impossible for him to have received a direct blow on the right side of the head from the swinging gate, that there is no fracture, despite medical opinion to the contrary. No place in the record does it appear that the fracture could have resulted only from a direct blow. Plaintiff was thrown to the right when struck. We think that the physical facts surrounding the accident do not demonstrate that an injury of this kind was inherently improbable.

Affirmed.