# FINN A. TAAJE v. ST. OLAF HOSPITAL.[1]

## No. 31,032.

### January 29, 1937.

*George Hoke, Martin A. Nelson,* and *Wright W. Brooks,* for appellant.

*Sasse, French & Dunnette,* for respondent.

[1]Reported in 271 N. W. 109.

LORING, JUSTICE.

Plaintiff, as special administrator of the estate of his deceased son, who died at the age of two months, brought this action to recover damages, alleging that the death of the child was caused by the negligence of the defendant hospital. A jury returned a verdict for the plaintiff for $1,500. From an order denying defendant's motion for judgment notwithstanding the verdict or a new trial this appeal is taken.

The child was born at defendant's hospital June 19, 1935, one month prematurely. The maternity ward of the hospital was attended by three regular and two substitute nurses. One of the two regular day nurses was Josena Syverud. She attended the Taaje baby along with several others. June 25 Miss Syverud, having had a severe cold and cough for over six weeks, became alarmed about her health and consulted a doctor. An X-ray examination of her lungs did not show a positive tubercular condition, but a sputum test disclosed that the sputum contained tubercle bacilli, and she was immediately ordered to a sanatorium where she was still confined at the time of the trial.

June 30, 1935, Mrs. Taaje left the hospital with her child. Within two weeks the baby became ill and was returned to the hospital August 10 and died August 22. Cause of death was acute miliary tuberculosis.

An expert witness testified that Miss Syverud had been afflicted with active tuberculosis for at least three months prior to July 2. At all times between June 19 and 25 Miss Syverud had severe coughing spells, some of the seizures taking place while she was caring for the Taaje baby. Nurses were required to wear masks when attending the babies. Miss Syverud did not use a mask. During her coughing spells she covered her mouth with her hand. There was expert medical testimony that during the six days Miss Syverud cared for the Taaje baby her tubercular condition was in the infective stage and that Miss Syverud was a "carrier." One doctor testified that in his opinion the child had been infected shortly after birth. The disease can be contracted by breathing in or swallowing tubercle bacilli.

■ There is abundant evidence to sustain a jury finding that the disease from which the child died was contracted from the nurse. The defendant does not concede that such is the case but admits that there "may have been sufficient evidence" to sustain such a finding. Other sources of possible infection were eliminated by examination of the other nurses and the Taaje family. All were found free from tuberculosis.

■ By far the most important question in the case is whether or not there was sufficient evidence of negligence in retaining the nurse to sustain a verdict against the hospital.

Harriet Rost was the superintendent in charge of the hospital. At least once each day she visited the maternity ward. The nurses working with Miss Syverud knew of her chronic cough, and the patients had discussed it. Miss Rost testified that if a nurse were ill she was required to report the fact and was then taken off duty. She thought that if a nurse had a cold for six weeks it would be the nurse's duty to report herself ill. Another nurse who had a cold during the same interval had voluntarily gone off duty on that account. Miss Rost testified that if she had known that Miss Syverud had had a cough for six weeks she would have had her examined. It is quite apparent that Miss Syverud's chronic cough and cold were well known to the other nurses and patients. It is difficult to see how the superintendent could be ignorant of the condition. It was her duty to exercise due care to see that her nurses were free from communicable disease. In the exercise of due care for the safety of the hospital patients, we believe that a jury was justified in finding that Miss Rost should have ascertained what was so generally known and should have taken Miss Syverud off duty when she failed to report herself ill. Even if she had no more than a common cold, ordinary prudence would have prevented the hospital from permitting her to attend the babies. Injury of some sort to the children was to be anticipated by any person of ordinary prudence. The infectious propensities and the often serious consequences of the common cold are well known. When her symptoms became markedly apparent, Miss Rost admit-

ted that the nurse should have been examined if she had known 'of them.

■ There is no merit in the various assignments of error dealing with the reception of expert opinion evidence. The testimony principally objected to was taken by deposition. The principal objections were to questions which in effect went to the infectious character of the disease. This is common knowledge. An examination of the record indicates that there was sufficient foundation laid for the hypothetical questions.

³■ Appellant assigns error upon the introduction of a hospital chart in evidence. The chart was admissible under the doctrine laid down by this court in Lund v. Olson, 182 Minn. 204, 234 N. W. 310, 75 A. L. R. 371, 382. See also Schmidt v. Riemenschneider, 196 Minn. 612, 265 N. W. 816.

■ The verdict was for $1,500. The child was but two months old. The verdict is substantial but, we think, not excessive.

The order of the trial court is affirmed.

MR. JUSTICE PETERSON, not having been a member of the court when this case was argued and submitted, took no part in its consideration or decision.

ON APPLICATION FOR REARGUMENT.

On March 12, 1937, the following opinion was filed:

PER CURIAM.

Appellant has called our attention to the fact that it did not assign as error the introduction of the hospital chart or "clinical record." What defendant objected to was the "case history" as related by Doctors Flanagan and Ikeda. Paragraph four is therefore stricken from the opinion and from the syllabus. We have carefully reëxamined the medical testimony in the light of the petition for reargument. The part of the "case history" which defendant deems objectionable varies so slightly from the undisputed facts and defendant's clinical record that we would not reverse on the ground of hearsay. The error, if any, was without prejudice, and

³See opinion on application for reargument, *infra,* p. 116.

we adhere to the views expressed in the original opinion in that regard. This in no way impinges upon or modifies the rule of Williams v. G. N. Ry. Co. 68 Minn. 55, 70 N. W. 860.

Petition denied.