JAMES P. WATTS v. DELAWARE COACH COMPANY, a coporation of the State of Delaware.

*(April* 15, 1948.)

LAYTON, J., sitting.

*P. Warren Green* for Plaintiff.

*William H. Foulk* and *Herbert L. Cobin* for Defendant.

Superior Court for New Castle County, No. 76, September Term, 1947.

LAYTON, J., delivering the opinion of the Court:

On the night of August 31, 1946, Plaintiff testified that he attempted to board a bus operated by Defendant which was standing at a regularly designated bus stop to receive passengers and that as he placed his foot upon the step, the door was closed on his ankle and the bus started, throwing him to the ground with a sharp twist to his ankle. There were no witnesses to the accident. Defendant, who did not deny the injury, defended upon the ground that Plaintiff was hurt, not in attempting to board its bus, but because he twisted his ankle while walking at or near the bus stop. In support of this contention Defendant produced all six drivers who operated its buses along the particular route on the evening in question. All testified that no accident occurred as related by Plaintiff. Defendant then offered in evidence the records of the hospital where Plaintiff was treated which contained a statement purportedly made by Plaintiff that he had broken his ankle while walking along the sidewalk. The hospital interne who treated Plaintiff for his injuries on the night in question was called to the

stand to qualify the hospital report for admission under the Uniform Business Records Act, Vol. 45 Laws of Delaware, Chapter 252, which reads as follows:

"4704A. Section 19A. Business Records as Competent Evidence:—The term 'business' shall include every kind of business, profession, occupation, calling or operation of institutions, whether carried on for profit or not. A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission. This section shall be so interpreted and construed as to effectuate its general purposes to make uniform the law of those states which enact it."

Plaintiff's counsel strenuously objected to the admission of that part of the hospital record, containing the words "Patient states he twisted ankle while walking along street," for the reason that the interne had no independent recollection of treating Plaintiff or of his making the statement, and therefore could not be cross-examined as to the circumstances surrounding the making of the statement. In particular, the admission of the statement was resisted for the reasons (a) there was evidence that Plaintiff could not have made the admission in question because he was unconscious or dazed when admitted to the hospital and remained so for several hours thereafter thus rendering the source of information as to the making of the statement so doubtful and unreliable as to justify its exclusion under the Act and (b) such language did not constitute an entry made in the regular course of the business of a hospital. Conceding that the statement, if properly proved, would con-

stitute an admission against interest, he nevertheless insisted that it failed to meet the requirements of the Act and should be excluded as hearsay.

 A review of the evidence convinces me that Plaintiff's objection to the admission of the statement in question based upon ground (a) is not tenable. Admittedly there was evidence that Plaintiff was semi-conscious or dazed when admitted to the hospital from which an inference could be drawn that he should not be held responsible for what he said with respect to the manner in which the accident occurred. However, there was strong evidence directly to the contrary.[1] Moreover, the hospital record fails to bear out his contention that he was unconscious. Accordingly, insofar as this ground of objection goes, I am of the opinion that the whole record should have been admitted leaving it to the jury to decide what weight should be attached to the statement.

 The remainder of this opinion will be devoted to a consideration of the question whether the statement in controversy was recorded within the scope of hospital business. In recognition of the difficulties inherent in the proof of business records in the trial of cases, Uniform Business Records Acts have gradually been enacted in many states. In theory, regular entries constituting the business records of a corporation or institution, and otherwise conforming to the safeguards set out in the Act, are said to be so stamped

---

[1] A policeman and passerby found Plaintiff lying on the sidewalk near the bus stop. The passerby held a flashlight on the policeman's note book while he recorded Plaintiff's version of the accident which was "I tripped and fell while walking." Plaintiff was not unconscious but talked freely and apparently lucidly. The policeman's report was duly entered in the records of the city police department. At the trial neither he nor the passerby had any independent recollection of Plaintiff making the admission in question. Because the statement was made under circumstances indicating a reasonable guarantee of trustworthiness in its recording and because it seemed to have been clearly within the scope of police, if not hospital, business, I admitted it.

with the reasonable guarantee of trustworthiness as to justify their admission in evidence as an exception to the hearsay rule.[1] *Wigmore on Evidence, Vol. V, Sec.* 1521 *et seq.* Accordingly, the regularly kept records of a business, and specifically speaking of a hospital, which fairly conform to the requirements of the Uniform Business Records Act are now constantly offered and admitted in evidence. And this is so even though the witness who made up the record from actual knowledge, has forgotten the incident or event in question. *New York Life Ins. Co. v. Taylor,* 79 *U.S.App.D.C.* 66, 147 *F. 2d* 297, 302. Presumably also, the person or persons who actually compiled the record being unavailable, a hospital librarian, having no knowledge of the event, might qualify the record for admission. *New York Life Ins. Co. v. Taylor,* 79 *U.S. App.D.C.* 66, 147 *F.2d* 297, 302. *Weis v. Weis,* 147 *Ohio St.* 416, 72 *N.E. 2d* 245, 169 *A.L.R.* 668, contains an excellent general discussion of the subject as well as a review of a number of the cases dealing with the admissibility of hospital records under Uniform Business Records Acts. At page 250 of 72 N.E.2d the Court states:

"Such a hospital or physician's office record may properly include case history, diagnosis by one qualified to make it, condition and treatment of the patient covering such items as temperature, pulse, respiration, symptoms, food and medicines given, analysis of the tissues or fluids of the body and the behavior of and complaints made by the patient. *Globe Indemnity Co. v. Reinhart,* 152 *Md.* 439, 446, 447, 137 *A.* 43; *Adler v. New York Life Ins. Co.,* (8 *Cir.*) 33 *F.2d* 827; *New York Life Ins. Co. v. Bullock,* (*D.C.*) 59 *F.2d* 747; *Lund v. Olson,* 182 *Minn.* 204, 234 *N.W.* 310, 75 *A.L.R.* 371; 6 *Wigmore on Evidence,* 3d *Ed.,* 36, *Section* 1707.

"The purpose of Section 12102-23, General Code, is to

---

[1] For all practical purposes this rule was in effect in Delaware prior to the enactment of Chap. 252, Vol. 45, Laws of Delaware. See *Grossman v. Delaware Electric Power Co.,* 4 *W. W. Harr.* 521, 155 A. 806.

liberalize and broaden the shopbook rule, recognized at common law as an exception to the general rule excluding hearsay evidence, and to permit the admission of records regularly kept in the course of business and incident thereto, and, as applied to hospital records, to avoid the necessity and thereby the expense, inconvenience and sometimes the impossibility of calling as witnesses the attendants, nurses and physicians who have collaborated to make the hospital record of a patient. *New York Life Ins. Co. v. Taylor,* 79 *U.S.App.D.C.* 66, 147 *F.2d* 297; 6 *Wigmore on Evidence, 3d Ed.,* 36, *Section* 1707.

"The exception to the hearsay rule of evidence in such cases is based on the assumption that the records, made in the regular course of business by those who have a competent knowledge of the facts recorded and a self-interest to be served through the accuracy of the entries made and kept with knowledge that they will be relied upon in a systematic conduct of such business, are accurate and trustworthy. In other words, such records are accepted as accurate and trustworthy, until inaccuracy is shown, upon faith in the routine by which and in the purpose for which they are made. Globe Indemnity Co. v. Reinhart, supra. Of course, if it should appear that such records have been made and kept solely for a self-serving purpose of the party offering them in evidence, it would be the duty of a trial court to refuse to admit them."

However, the precise question before me is whether a declaration against interest by a party to a case is admissible by way of a hospital record under circumstances where no witness was called to testify of his own memory that he heard the statement made.

A number of cases cited to me do not support the exact proposition here. In most, the statement appearing in the particular record was ruled out either because it was (a)

completely self-serving as in *Hoffman v. Palmer, (2 Cir.)* 129 *F.2d* 976, or (b) pure hearsay on its face as in *Slater v. United Fuel Gas Co.,* 126 *W. Va.* 127, 27 *S.E.* 2d 436. Furthermore the decisions bearing more or less directly on the question are somewhat in conflict.

. *Hoffman v. Palmer, (2 Cir.)* 129 *F. 2d* 976, involved a railway crossing collision. After the event, the engineer gave his version of the accident to his Superintendent and his statement was entered, somewhat informally, in the records of the railway company. The engineer died. In a suit by Plaintiff's intestate against the railway company for damages the statement of the deceased engineer was offered in evidence by the Defendant railroad as to the manner in which the accident occurred. Judge Frank ruled out the statement. He concluded it was self-serving and did not carry with it that superficial guarantee of trustworthiness necessary to qualify it for admission under the Federal Business Records Act.[1] Judge Frank's philosophy apparently is that if the circumstances surrounding the making of the statement are such as to indicate a reasonable guarantee of trustworthiness it should be admitted without much regard to other requirements of the Act. He felt that the particular statement was one within the scope of the business of a railroad and, were it not a self-serving statement, it would have been admissible, despite the fact that it was an informal entry and was made some time after the event.

On certiorari to the Supreme Court of the United States the opinion was affirmed (318 *U.S.* 109, 63 *S.Ct.* 477, 479, 87 *L.Ed.* 645, 144 *A.L.R.* 719), but on somewhat different grounds. That Court did not agree that such a statement constituted an entry in the regular course and scope

[1] Though the language of the Federal Act (28 U. S. C. A. § 695) differs from that of this State, it is the same for all practical purposes. See Palmer v. Hoffman, 318 U. S. 109, 114, 63 S. Ct. 477, 87 L. Ed. 645, 144 A. L. R. 719.

of business of a railroad in the sense intended by the Act. It indicated that entries in the regular course of business were to be limited strictly to those routine matters directly incident to the operation of a railroad. In this connection the Court stated:

"We may assume that if the statement was made 'in the regular course' of business, it would satisfy the other provisions of the Act. But we do not think that it was made 'in the regular course' of business within the meaning of the Act. The business of the petitioners is the railroad business. That business like other enterprises entails the keeping of numerous books and records essential to its conduct or useful in its efficient operation. * * *

"The engineer's statement which was held inadmissible in this case falls into quite a different category. It is not a record made for the systematic conduct of the business as a business. An accident report may affect that business in the sense that it affords information on which the management may act. It is not, however, typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls. The conduct of a business commonly entails the payment of tort claims incurred by the negligence of its employees. But the fact that a company makes a business out of recording its employees' versions of their accidents does not put those statements in the class of records made 'in the regular course' of the business within the meaning of the Act. * * * Any business by installing a regular system for recording and preserving its version of accidents for which it was potentially liable could qualify those reports under the Act. The result would be that the Act would cover any system of recording events or occurrences provided it was 'regular' and though it had little or nothing to do with the management or operation of the business as such. * * *"

In *New York Life Ins. Co. v. Taylor,* 79 *U.S.App.D.C.* 66, 147 *F.2d* 297, 303, an action was brought under the double indemnity clause of a policy of insurance upon the theory that deceased died as the result of accident. The suit was defended upon the ground of suicide. The records of Walter Reed Hospital were offered as evidence of deceased's suicidal frame of mind. The record reflected the diagnosis of a psychiatrist on the psyschoneurotic condition of the deceased. It also contained a statement made to a nurse to the effect that he (patient) took an overdose of codein because he wanted to die. The majority, following the reasoning of the Supreme Court in Palmer v. Hoffman, excluded both the diagnosis and the deceased's statement in the following language:

"Hospital records are no different from any other kind of records kept in the regular course of business. They must be subjected to the same tests as to subject matter. Regularly recorded facts as to the patient's condition or treatment on which the observations of competent physicians would not differ are of the same character as records of sales or payrolls. Thus, a routine examination of a patient on admission to a hospital stating that he had no external injuries is admissible. An observation that there was a deviation of the nasal septum is admissible. Likewise, an observation that the patient was well under the influence of alcohol. But the records before us here are not of that character. The diagnosis of a psychoneurotic state involves conjecture and opinion. It must, therefore, be subjected to the safeguard of cross-examination of the physician who makes it. And accounts of selected items from interviews with patients must be subject to the same safeguard.

"If this were not true, a newspaper reporter's notes on an interview or observation of an accident would be ad-

mitted in evidence without calling the reporter himself. * * *

"These considerations apply with equal force to the hospital records offered below which disclose that the patient said he took an overdose of codein and aspirin because he wanted to die. This remark was retold by the nurse to the attending physician and recorded by him. It is contradicted by another conversation with the same physician, also part of the record, in which the patient said he only wanted to get relief from itching. The record that the patient took an overdose was a routine entry of a fact on which observers would not differ. But the excerpts from the patient's conversation reported by a nurse are no different from a newspaper reporter's account of an interview. They are made in the regular course of business in the colloquial sense but not as that term is intended for use by statute. The consequence of the position taken by Judge Edgerton would be that the mere absence of an apparent motive to misrepresent makes admissible any and all business records which are regularly kept regardless of their character. This, we believe, is a legislative change in the Shop Book Rule which is not permitted by the statute."

There was a strong dissent by Judge Edgerton who contended that all of the record should have been admitted upon somewhat the same reasoning as employed by Judge Frank in the Palmer decision. I have quoted from both opinions at some length not only because they contain excellent general discussions of the question here but also reflect the fundamentally divergent philosophies underlying the judicial reasoning of those who have had occasion to consider the subject.

Other cases will be considered more briefly. In *North American Accident Ins. Co. v. Hill's Adm'r*, 182 *Ky*. 125, 206 *S.W.* 170, 171, a physician was allowed to testify that

Plaintiff stated to him that he fell upon his grip while attempting to board a train. In reversing the trial Court's admission of the testimony the Court of Appeals of Kentucky stated:

"It is a rule quite universally recognized that it is competent for a patient to give a history of his case to his physician, so as to enable the latter to render a proper diagnosis and give such treatment as the affliction demands. This, however, in the instant case, required no more than that the patient should have said to the physician that he had sustained an accident, wherein he fell upon his grip, or the grip fell upon him, naming the part of the body affected, together with the symptoms following."[1]

In *Freedman v. Mutual Life Ins. Co.*, 342 *Pa.* 404, 21 *A.2d* 81, 86, 135 *A.L.R.* 1249, deceased's personal representatives sued on a policy of insurance in the application for which deceased had stated that he had not consulted a physician within the past five years. The insurance company defended on the ground of fraud and a number of physicians testified over objection that deceased had consulted them within the past five years. In this connection, the Supreme Court of Pennsylvania through Drew, Justice, stated:

"Those by whom the records were made are not parties to this action and have no interest in its termination or incentive to falsify the relevant facts. They personally examined the insured and prescribed for him. They heard his statements of symptoms made for the purpose of medical treatment. These facts were recorded at the time they transpired and in the course of the professional business of the physicians. They were fully as competent to compile these records as those by whom the records of the usual

---

[1] The fact that the accident happened upon a train was a material issue in this case.

hospital are prepared. Certainly the records should be documentary evidence of the number of visits of the insured and the treatment prescribed. They should also be competent evidence of the statements made by the insured concerning his symptoms. It is well settled that statements made to a physician for the purpose of receiving medical advice are not excluded by the hearsay rule."

In *Commonwealth v. Harris,* 351 *Pa.* 325, 41 *A.2d* 688, 691, a hospital record containing a statement of deceased that he was shot by an unknown white man was ruled out on the trial of a negro for the murder of the deceased. Chief Justice Maxey, of the Pennsylvania Supreme Court, stating:

"Certainly every 'act, condition or event' which some hospital physician places in a hospital record does not ipso facto become competent when later an issue is being judicially tried to which such fact would be relevant if proved by competent testimony. The Act of 1939 obviously means that the 'act, condition or event' recorded in the hospital must be pathologically germane to the physical or mental condition which caused the patient to come to the hospital for treatment. The color (or identity) of the man who shot this patient had no medical or surgical relationship whatsoever to the patient's physical condition at the time. It was really none of the physician's professional 'business' who shot the patient. It was natural for him to make such a personal inquiry of the injured man, but neither the inquiry nor the answer, if both were made, were entitled to be entered on the hospital record 'in the regular course of [hospital] business.' Hospital business and police business are two different things. The record as to the color of the man who shot the paitent was merely a bit of gratuitous reporting on the part of the physician. It is not 'made in the regular course of the physician's business'."

And in *Cerniglia v. City of New York,* 182 *Misc.* 441,

49 *N.Y.S.2d* 447, 448, an admission against interest appearing in a hospital record was admitted in evidence. The record showed that Plaintiff had stated "she fell down as she was getting off a street car. She doesn't recall how she fell but thinks her heels slipped on the street." The Court said:

"As part of his work in arriving at his diagnosis, it is ncessary for the doctor to examine his patient both physically and mentally. What the patient says often has a direct bearing upon the doctor's determination of the nature and extent of the injury. If the patient states that he fell and landed on the back of his head, that, undoubtedly, is of great importance to the doctor. If the patient states that he fell lightly or heavily on his head, that again will have great weight with the doctor in determining the nature and extent of the injury."

The above opinions disclose near uniformity of judicial thought in at least two respects (a) all matter contained in a business record is not admissible per se merely because regularly entered in accordance with some preconceived policy established for the conduct of a particular business and (b) to be admissible, the subject matter of the entry must be within the scope, or course, of the business, though some courts are more liberal than others in defining what the scope of a particular business may be. Thus, the mere fact that the statement in this case was regularly entered on a standard hospital form under the heading "state where and how this accident happend" would not of itself render admissible all matter entered thereunder. To take a clear illustration, if the statement in controversy had been "Patient states he was stabbed in the shoulder at Fourth and Market Streets" the words "at Fourth and Market Streets" could scarcely be regarded as germane to the business of diagnosing and treating an injury, thus not within the scope of hospital business and consequently not

admissible into the evidence of a law suit though otherwise relevant to the issues. Inconsistent though it may seem, the same words might be construed as well within the scope of police business, and though inadmissible by way of a hospital record, yet admissible in a police report. (See *Commonwealth v. Harris, supra.*) Admittedly it could be contended with some justification that the exclusion of the words "at Fourth and Market Streets" would produce an unnecessarily harsh result in a case where the outcome might hinge on their admission in evidence. The more liberal minded could argue with some justification that this language, even though clearly outside the scope of hospital business, was uttered at such time and under such circumstances as strongly to indicate its truth, and having been recorded by persons having no interest in misrepresenting facts, it should be admitted as carrying with it the strongest guarantee of trustworthiness. The short answer to such an argument would seem to be this. The manifest difficulties attending the qualification of the business records of large corporations for admission in evidence at trials often produced grave injustices. To cure the evil, various legislatures passed Uniform Business Records Acts establishing a limited exception to the hearsay rule. To restrict the use of this type of hearsay only to that which was intended the Legislatures have set forth certain requirements, or safeguards, which must be met in order to qualify such records for admission. One of the safeguards is that the act, event or condition so recorded must be entered in the regular course of business. The decisions have almost uniformly interpreted this as meaning in the scope of the business for the reason, apparently, that the consequent minimization of the evils of hearsay testimony outweigh the occasional hardship or inconsistency resulting from a reasonably strict construction of such acts.

The rule running through the above cases seems

clearly to be this—that admissions against their interests by patients regularly entered in hospital records (all other requirements of the Act having been met) may be received in evidence at a trial only if so related to the complaint or injury involved as to facilitate prompt and intelligent diagnosis and treatment. But the formulation of such a general rule is far simpler than its application and only in those few cases where the particular statement in controversy is so clearly within or without the scope of hospital business as to admit of little doubt, can the rule thus stated be applied with assurance. In those numerous instances, as in the case at bar, where the particular statement in issue is on the borderline between scope of business in the colloquial, rather than the strict, sense intended by the Act, the result will necessarily hinge upon the liberality or strictness of the views of the trial judge.

After careful thought I have decided that Plaintiff's statement appearing in the record in the case at Bar to the effect that he twisted his ankle while walking along the street was "pathologically germane", to borrow an apt expression of Mr. Justice Drew's, to the injury which necessitated his attendance at the hospital. It is reasonable to suppose that the words "while walking along the street" were not merely descriptive of the injury and thus altogether irrelevant, but aided the attending physician to some extent in diagnosing and treating the fracture. The knowledge that the injury had occurred from a twist while walking ruled out the possibility of the ankle having been crushed. The doctor testified it was necessary for him to know how the injury occurred in order properly to treat it. In the instant case this seems particularly true because at the time of Plaintiff's admission to the hospital, a Roentgenologist was not available. Immediate treatment of the injury therefore had to be given without benefit of X-ray, and the statement as to how the accident happened was of more

than usual importance. There is no medical testimony to the contrary. Though aware that the proposition is debatable, I am now inclined to the view that the statement was properly recorded within the scope of hospital business.

Under these conditions I feel there should be a new trial. Though, in a sense, only corroborative of the statement made by the Plaintiff in the police record already in evidence, yet the particular evidence goes to the very heart of defendant's case. Its exclusion might well have affected the outcome. As stated in Corpus Juris Vol. 46, section 75(b) :

"The exclusion of proper evidence is ground for a new trial—provided, however, that the ruling is prejudicial—especially where the excluded evidence goes to the very root of the matter in controversy, * * * That there was other evidence of the same general character, or even that the rejected evidence was cumulative, * * * may not render the error harmless."

The motion for a new trial is granted.