JOHN M. FLEMMING v. ROY THORSON AND ANOTHER.
ST. PAUL CITY RAILWAY COMPANY, APPELLANT.[1]

June 16, 1950.

No. 34,998.

[1]Reported in 43 N. W. (2d) 225.

*C. J. Menz* and *Arthur J. Donnelly,* for appellant.

*Clifford W. Gardner* and *George H. Gerlich,* for respondent John M. Flemming.

*Meagher, Geer & Markham* and *Herbert C. Davis,* for respondent Roy Thorson.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order denying the motion of defendant St. Paul City Railway Company for a new trial after verdicts for plaintiff and for defendant Roy Thorson.

On January 22, 1948, plaintiff was a passenger in the automobile of Roy Thorson when it collided with a streetcar operated by the St. Paul City Railway Company. Plaintiff thereupon brought this action for damages against Thorson and the street railway company, alleging that the injuries which he sustained in the collision were caused by the combined and concurrent negligence of both Thorson and the company. A jury trial resulted in a verdict of $25,000 for plaintiff against the company only and also a verdict in favor of Thorson. The company appealed, joining Thorson as respondent. We also have before us Thorson's motion to dismiss the appeal as to him on the ground that the company has not assigned or argued any error affecting the trial of the case with respect to him.

The company concedes that the evidence made out a jury issue as to the negligence of defendants and the contributory negligence of plaintiff. In view of this, we shall state only those facts necessary to an understanding of the errors assigned.

Immediately after the accident, plaintiff and Thorson were placed in an ambulance for removal to Ancker Hospital. Defendants' witness, Dr. Joseph J. McCarthy, was the police surgeon on duty with

the ambulance. He testified that plaintiff was conscious, but that Thorson was not, and that plaintiff admitted that he had had six or seven whiskies. The witness said that he smelled whisky on the breath of both plaintiff and Thorson. Plaintiff remained at Ancker Hospital four days. It appears that he was unconscious or nearly so most of this time. He was then removed to Midway Hospital, where he remained for a period of seven weeks. His injuries, as diagnosed by his doctor, consisted of a comminuted fracture of the upper right tibia and fibula, concussion of the brain, multiple contusions, and contusion of the left hand. These injuries were permanent to some degree, and we shall refer to them later herein.

The street railway company assigns as error (1) that the court erred in ruling that the records of Ancker Hospital pertaining to plaintiff should not be received in evidence; (2) that the court erred in limiting the cross-examination of plaintiff's attending physician, Dr. C. E. Watz; (3) that counsel for plaintiff was guilty of misconduct in his argument to the jury; and (4) that the verdict is excessive and appears to have been given under the influence of passion and prejudice.

■ With reference to business records, the uniform business records as evidence act was enacted by L. 1939, c. 78 (M. S. A. 600.01 to 600.04). Section 600.01 defines the term "business" as including every kind of business, profession, occupation, calling, or operation of institutions, whether carried on for profit or not. Section 600.02 provides:

"A record of an act, condition, or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission."

It appears from the record before us that the trial court excluded certain records of Ancker Hospital offered by the street railway

company. These records pertained to the time plaintiff was in the hospital after the accident and to earlier hospitalization for non-connected causes. Plaintiff contended that the records were inadmissible under the uniform business records as evidence act because they were offered only to show that they had been marked "HOLD FOR POLICE" and only on the issue of plaintiff's contributory negligence.

In its efforts to introduce the records in question, the company produced two witnesses. The first, William K. Ward, an accountant clerk at Ancker Hospital, identified the record as a complete history of the treatment received by plaintiff at Ancker Hospital for the period April 13, 1945, to January 26, 1948. The entire record was then offered and excluded. The company then offered the portion of the record covering treatment from January 22, 1948, to January 26, 1948. A controversy ensued, during which it appeared that Ancker Hospital is maintained and operated by Ramsey county and the city of St. Paul; that the records were kept in the ordinary course of business; and that the entries were made by the doctors and the nurses. The witness further testified that the registrars and the record librarian had charge of the records. Plaintiff objected to the offer of that portion of the record covering treatment from January 22, 1948, to January 26, 1948, and the court sustained the objection "on the broad ground there is no foundation laid." Counsel for the company then stated that he wished the record to show that he had offered the chart and that the court had excluded it for want of foundation. Counsel said further: "We re-offer the chart which contains the following items: 1. That this man was marked: 'HOLD FOR POLICE'." This offer was not granted by the court.

Later, the company called Ernest R. Johnson, the chief clerk at Ancker Hospital. He testified that the records were made by persons in the employ of Ancker Hospital who had authority to do so and in the usual course of hospital business. Counsel for plaintiff then commenced an inquiry for the purpose of laying a foundation and making an objection to the exhibit in which it was brought out that "this mark" (apparently referring to the "HOLD FOR POLICE"

legend) was not ordered to be placed on the record by anyone connected with the hospital and that the witness could not personally vouch for the truth of everything entered on the chart. Objection was again made to the admission of the record, and it was sustained by the court.

Insofar as we can determine, this court has never decided when and for what purposes hospital records are admissible under the uniform business records as evidence act. The question was raised, but not decided, in Ost v. Ulring, 207 Minn. 500, 292 N. W. 207, since the verdict in the trial of that case was returned shortly before the act was passed. Earlier cases have held that such records were admissible where an adequate foundation had been laid (Lund v. Olson, 182 Minn. 204, 234 N. W. 310, 75 A. L. R. 371) and have intimated that they were admissible on the same basis as records of business concerns (Schmidt v. Riemenschneider, 196 Minn. 612, 265 N. W. 816; Draxten v. Brown, 197 Minn. 511, 267 N. W. 498) when they were offered to prove facts germane to the hospitalization. On the other hand, we have excluded them when introduced to prove a self-serving statement of the patient. In re Estate of Lust, 186 Minn. 405, 243 N. W. 443. In Rice v. New York L. Ins. Co. 207 Minn. 268, 273, 290 N. W. 798, 800, after saying that such records were not evidence of some of the recitals of fact therein, we said:

"* * * The basis on which such reports are admitted is that they are a contemporary record of the treatment or transactions at the hospital or clinic."

The decisions of other states on the question quite uniformly hold:

"Under this [uniform business records as evidence act] and similar statutes, by the great weight of authority, those portions of hospital records made in the regular course of business and pertaining to the business of hospitalization and recording observable acts, transactions, occurrences or events incident to the treatment of a patient are admissible, in the absence of privilege, as evidence of the facts therein recorded, insofar as such records are helpful to an understanding of the medical or surgical aspects of the case,

* * *." Weis v. Weis, 147 Ohio St. 416, 424, 72 N. E. (2d) 245, 250, 169 A. L. R. 668.

See, also, Loper v. Morrison, 23 Cal. (2d) 600, 145 P. (2d) 1. As the above statement indicates, one of the requisites of admissibility is that the subject of the entry must be within the scope or course of hospital business. See, Watts v. Delaware Coach Co. (Del. Super.) 58 A. (2d) 689; New York L. Ins. Co. v. Taylor, 79 App. D. C. 66, 147 F. (2d) 297.

The meaning of this requirement in a case somewhat similar to the one at bar was discussed in Commonwealth v. Harris, 351 Pa. 325, 41 A. (2d) 688, in connection with a uniform business records as evidence act identical with § 600.02 of our law. There, the question was the admissibility of hospital records containing the patient's statements relating to who shot him. The court pointed out that the matter contained in the hospital records must be (351 Pa. 330, 41 A. [2d] 691) "pathologically germane" to the condition for which the patient was hospitalized if the records were to be considered as "made in the regular course of business." Green v. City of Cleveland (Ohio App.) 79 N. E. (2d) 676 (affirmed, 150 Ohio St. 441, 83 N. E. [2d] 63).

In the case at bar, it would appear that the hospital records were offered not only to show the condition of plaintiff while in the hospital, but also to show the "Hold For Police" notation. While counsel for the street railway company offered to eliminate from the hospital records that part pertaining to the care and treatment of plaintiff prior to January 22, 1948, he at no time offered to have that part pertaining to "Hold For Police" deleted or not considered by the jury. In chambers, in the absence of the jury, after the court had sustained plaintiff's objection on the broad ground that there was no foundation laid, counsel for the street railway company requested that the record show that he had offered this chart in evidence and that plaintiff's objection had been sustained on the ground of lack of foundation. He reoffered the chart containing the item: "1. That this man was marked: 'Hold For Police'," which offer was not granted by the court.

We hold that under the facts and circumstances here the records were not admissible with the notation stamped thereon to the effect that plaintiff was to be held for the police. Our reasons are (1) that there was no showing that the notation "HOLD FOR POLICE" was made in the regular course of business or that it pertained to the business of hospitalization and recording acts, transactions, occurrences, or events incident to the treatment of the patient; and (2) that the notation on the record was in no way germane to the condition for which plaintiff was hospitalized and was being treated. Here, we have a situation where one part of the hospital record pertained to the treatment the patient received for his injuries and the other part referred to holding the patient for the police, a matter which had nothing to do with the physical condition of plaintiff and which could only tend to create a prejudicial feeling as to him so far as the jury was concerned. As was said in Commonwealth v. Harris, 351 Pa. 331, 41 A. (2d) 691, *"Hospital* business and *police* business are two different things."  Cf. In re Estate of Lust, 186 Minn. 405, 243 N. W. 443.

The next question for consideration is whether the court erred in limiting the cross-examination of plaintiff's attending physician, Dr. C. E. Watz.

Plaintiff testified that he was in good physical condition and able to work at all times prior to the accident. His physician was then placed on the stand, and he testified that he treated the plaintiff in November 1947 and that in December he hospitalized plaintiff for a condition which he suspected of being "thrombo p[h]lebitis." He further testified that plaintiff made an uneventful recovery in one week and that he had no recurrence of the condition. On cross-examination, the street railway company, over plaintiff's objection, elicited the information that plaintiff had been cared for by the witness about 18 times from August 6, 1944, to December 23, 1947, and that on two of those occasions in 1945 plaintiff had been hospitalized. The purpose of these hospitalizations is not shown. Counsel for the street railway company then asked the witness if plaintiff had suffered from any condition which might in any way

limit his ability to be employed during the period 1944-1946. Counsel for plaintiff objected, and counsel for the street railway company retorted that he wished to show that plaintiff was not working at all times during the 11 years preceding the accident, which he had claimed to be the case. Counsel for plaintiff then made further objection on the ground that the question was improper cross-examination on matters of defense only. The court sustained this objection, and the company offered to prove that from 1944 to 1947 plaintiff suffered from a chronic nervous condition induced by alcoholism and that this condition required a substantial period of hospitalization. The offer was rejected, and the company contends that, inasmuch as plaintiff's direct examination opened up the question of plaintiff's health prior to the accident, the company should have been permitted to explore the matter further on cross-examination.

The manner and scope of inquiry on cross-examination rests largely within the discretion of the trial court, the exercise of which constitutes no grounds for reversal except in cases of clear abuse thereof. Mattfeld v. Nester, 226 Minn. 106, 32 N. W. (2d) 291, 3 A. L. R. (2d) 909; 6 Dunnell, Dig. & Supp. § 10318, and cases cited under note 3.

Sufficient testimony as to former visits was admitted to raise a question in the jury's mind as to the truth of plaintiff's representations concerning his health, and the trial court might have decided that further inquiry was inappropriate on cross-examination. The order of proof is a matter resting largely in the trial court's discretion. Nardinger v. Ladies of the Maccabees, 138 Minn. 16, 163 N. W. 785. Had the company desired to pursue the matter further, it might have called the witness on its own behalf. Cf. Schmidt v. Schmidt, 47 Minn. 451, 50 N. W. 598; Gordon v. Pappas, 227 Minn. 95, 34 N. W. (2d) 293. In the circumstances, the trial court did not abuse its discretion in limiting the company's cross-examination of plaintiff's physician.

We do not consider the error assigned here as sufficient to justify a new trial.

█▐ The company contends that counsel for plaintiff was guilty of misconduct in his argument to the jury, claiming that as one of the reasons why an excessive verdict was returned.

An examination of the record discloses that no exceptions were taken at the close of the argument, but that *at the close of the court's charge* counsel for the street railway company stated:

"I wanted to get in at the close of plaintiff's argument an exception to that portion of the argument relating to the testimony of Dr. McCarthy on the ground that it was uncalled for and prejudicial to the rights of the defendant."

We see no further reference to the matter in the record, no further request to the court for corrective action, and no failure on the part of the court to rule or to act in the matter by taking some corrective action, *after it had been requested to do so by the party claiming to have been prejudiced.* Before counsel made the above statement, the court in its charge, did inform the jury that neither statements by the court, statements by the respective counsel in their opening remarks, nor arguments of counsel constituted evidence and that the jury was the sole and exclusive judge of the facts.

In Eilola v. Oliver I. Min. Co. 201 Minn. 77, 275 N. W. 408, it was claimed that plaintiff's counsel was guilty of misconduct in his closing argument to the jury. Some of his remarks constituted a severe and scathing denunciation of defendant. No exceptions were taken to these remarks during the argument. After the jury had retired, counsel for defendant took numerous exceptions to the argument, but did not request the court to give any instructions to the jury or to make any ruling with respect to the matter. This court there said (201 Minn. 80, 275 N. W. 409):

"* * * Ordinarily, in order to obtain a review of misconduct of counsel in argument, there must be an objection at the time of the alleged misconduct, a request by the party claiming to be prejudiced for appropriate corrective action, and a failure of the trial court to rule or act. Powell v. Standard Oil Co. 168 Minn. 248, 210 N. W. 55; 6 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 9800. An

objection is too late if made for the first time after the jury has retired."

While the situation in that case differs from the one in the case at bar, in that here the statement was made at the close of the court's charge, the record still shows no request to the court for corrective action and no refusal by the court to rule or to act after the request was made for it to do so.

In State v. Jansen, 207 Minn. 250, 257, 290 N. W. 557, 561, this court said:

"* * * Ordinarily a party must suggest to the trial court the objectionable argument and request appropriate instructions to cure the error before the jury retires."

See, also, State v. Soltau, 212 Minn. 20, 2 N. W. (2d) 155.

An examination of that part of plaintiff's argument with reference to the testimony of Dr. McCarthy discloses some caustic and denunciatory remarks made about the doctor, particularly with reference to plaintiff's claim as to his acting in a dual capacity by being employed by the city and also furnishing statements to the street railway company. While we do not sanction or condone the opprobrious references to the doctor, we believe that under the facts and circumstances here we would not be justified in granting a new trial on that ground alone. It is regrettable that in the heat of a legal controversy attorneys sometimes feel that it is necessary to go far into the field of denunciation of an opposing party or an adverse witness, but modern juries generally are keen and alert and usually sift the "wheat from the chaff" in connection with attorneys' arguments when they retire to the jury room. As said by the court in Devine v. Chicago City Ry. Co. 167 Ill. App. 361, 364, quoted with approval in Murphy v. Barlow Realty Co. 214 Minn. 64, 73, 7 N. W. (2d) 684, 690:

"* * * it is the presumption of law that jurors are intelligent, honest, fearless and just. Courts are not justified in assuming that the mind of the jury is of such plastic and unreliable material as

to at any unjustified word of debate neglect the instructions, abandon the evidence and disregard their oaths."

■ Finally, the street railway company contends that the verdict is excessive and that it appears to have been given under the influence of passion and prejudice.

The company stresses the fact that where the verdict was for $25,000 plaintiff suffered only $1,060.65 in special damages and that he was back at work in his tavern in less than six months after sustaining the injuries. While the company concedes that the injury to plaintiff's knee is permanent, it contends that the evidence shows that the disability presently estimated at 40 percent will eventually be reduced by about 20 percent. Examination of the record discloses that there is a conflict in the medical testimony as to whether any substantial reduction of the disability can be effected. In addition to the comminuted fracture of his right leg, which resulted in the knee injury, plaintiff also suffered a fracture of the bones in his left hand, which may produce some extended discomfort. He also suffered rib fractures, a pneumothorax, and extensive bruising of the muscles in the region of his right hip. The latter injury, coupled with that to the knee, may cause discomfort for some time.

To warrant our overturning the verdict on appeal, the damages awarded must so greatly exceed what is adequate as to be accountable on no other basis than passion and prejudice. Ott v. Tri-State T. & T. Co. 127 Minn. 373, 149 N. W. 544. In view of the painful nature of plaintiff's injuries, their permanence to some degree, the possibility of future medical expense, and the fact that he presently requires assistance in conducting his business, we shall not disturb the verdict.

As the company concedes, it is useless to compare this verdict with those in other cases. Thoirs v. Pounsford, 210 Minn. 462, 299 N. W. 16; Koenigs v. Thome, 226 Minn. 14, 31 N. W. (2d) 534. Suffice to say that the value of the dollar has decreased substantially since Ryan v. Twin City Wholesale Grocer Co. 210 Minn. 21, 297 N. W. 705 (decided in March 1941), upon which the company

here relies. See, also, Eichten v. Central Minnesota Coop. Power Assn. 224 Minn. 180, 28 N. W. (2d) 862.

Inasmuch as we are affirming the trial court's order refusing a new trial, we need not decide whether defendant Thorson is entitled to a dismissal of the appeal as to him.

Affirmed.

MR. JUSTICE THEODORE CHRISTIANSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.

[1]Reported in 43 N. W. (2d) 260.