CHARLOTTE GILLIGAN, PETITIONER-APPELLANT, v. IN-
TERNATIONAL PAPER COMPANY, RESPONDENT-RE-
SPONDENT.

Argued March 25, 1957—Decided May 6, 1957.

*Mr. Louis Winer* argued the cause for the appellant.

*Mr. John J. Monigan, Jr.,* argued the cause for the respondent (*Messrs. Stryker, Tams & Horner,* attorneys).

The opinion of the court was delivered by

JACOBS, J. The Workmen's Compensation Division rendered an award to the appellant by reason of the injury and death of her husband Walter W. Gilligan. Its action was reversed by the Morris County Court, which was affirmed by the Appellate Division. We granted certification.

The decedent Walter W. Gilligan was an employee of the respondent International Paper Company at its plant in Whippany. He operated a starch adhesives machine which was placed on a platform and consisted of a "storage tank, bottom mixture and top cook." His duties included loading the machine with 11 100-lb. bags of cornstarch, 30 lbs. of borax and 34 lbs. of flake caustics. The bags were customarily brought up by a crane and placed on the platform and the operator then tore the top of each bag to open it,

inserted its neck into an opening in a covered mixer and emptied its contents into the machine.

On June 25, 1953 the decedent reported for work at the respondent's plant at 7 A. M. He presumably began his operation and at about 8 A. M. he was found unconscious on the floor about 25 feet from the starch machine. While unconscious he was taken to All Souls Hospital in Morristown and then to St. Joseph's Hospital in Paterson. His wife testified that he was still unconscious when she visited him at the Paterson hospital on June 26, but that he was conscious when she visited him on the 27. She testified that the decedent told her that "all that he remembered was that he was loading his machine and dust came from it and he fell to the floor and he didn't remember any more." The St. Joseph's Hospital record contained a history sheet dated June 26, 1953 which recited that there had been a "sudden onset 36 hours ago when coughing dust at place of work." Dr. Stellar, who treated the decedent at St. Joseph's Hospital, testified on direct examination that he received a history from the decedent and that according to the history which he recorded on the chart "the patient had a sudden coughing spell while at work which was reported to be the result of inhaling dust at his place of work." However, on cross-examination he testified that he saw the decedent on June 26, 1953 upon his admission to St. Joseph's Hospital and that "he was barely able to respond to movement" and "couldn't give any history." The hospital record contained a notation that on the evening of June 26 the decedent was conscious and talking coherently from 10 P. M. to midnight. It also contained a separate column entitled "Past History: Diseases from Childhood to Date, Habits, Social Data" and the notation thereunder: "history from wife who is well as are two children."

The decedent was discharged from St. Joseph's Hospital on July 10, 1953. He remained at home until July 27 when he lapsed into unconsciousness. He died at All Souls Hospital on July 28 from a ruptured mycotic cerebral aneurysm. Testimony as to all of the foregoing was produced

before the Deputy Director of the Workmen's Compensation Division; in addition, medical testimony was introduced to establish a causal connection between the decedent's inhalation of dust causing him to cough and the ensuing rupture of his pre-existing congenital aneurysm which resulted in his death. *Cf. Reynolds v. Public Service Coordinated Transport*, 21 *N. J. Super.* 528, 538 *(App. Div.* 1952), certification denied 11 *N. J.* 214 (1953). No testimony was introduced on the respondent's behalf but it moved to dismiss the appellant's claim on the ground that the evidence did not establish a compensable accident. The deputy director found "that the decedent did sustain injury by accident arising out of and in the course of his employment with the respondent on June 26, 1953, when the petitioner's decedent suffered what the doctors have called a rupture of a cerebral aneurysm that led to his death."

On appeal, the Morris County Court expressed the view that there was adequate medical testimony to sustain the position that "if the decedent inhaled dust in the course of his employment causing him to cough" it was causally related to his death. But it could find nothing in the record to indicate "the presence of dust" in the plant and it rejected the deputy director's action in judicially noticing that circumstance. On further appeal, the Appellate Division also determined that there was no competent evidence establishing that there was dust which had induced coughing and ensuing rupture. It approved the denial of the appellant's request that the cause be remanded to the deputy director to take testimony "as to the creation of dust" and affirmed the judgment of the County Court. However, when certification was granted we directed that the record be supplemented with additional testimony as to whether the dumping of the 11 100-lb. bags of starch into the machine followed by the borax and caustic flakes, would in fact create dust. *Gilligan v. International Paper Co.*, 21 *N. J.* 557 (1956). The record was supplemented and supports the deputy director's view that the operation involved the emanation of starch particles

or dust which might induce coughing; it is not without significance that although they were not generally used, the respondent had supplied dust masks. to the decedent and other operators of the starch machine. There still remains, however, the troublesome issue of whether the appellant has satisfactorily carried the burden of establishing that the decedent · had actually inhaled dust which had induced coughing and which in turn had brought on the rupture of the cerebral aneurysm.

 The Workmen's Compensation Act is remedial legislation designed to place the costs of accidental injuries which are work-connected upon employers, who may readily provide for them as operating expenses. It provides for compensation for injury "by accident arising out of and in the course of" the employment, *R. S.* 34:15–1; an accident is said to arise out of the employment when it results from a risk reasonably incidental thereto (*Geltman v. Reliable Linen & Supply Co.*, 128 *N. J. L.* 443, 446 (*E. & A.* 1942)); and it is said to arise in the course thereof when "it occurs while the employe is doing what a man may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." *Bryant, Adm'x. v. Fissell*, 84 *N. J. L.* 72, 77 (*Sup. Ct.* 1913). An idiopathic collapse is not compensable simply because it occurred at the place of work during working hours (*Henderson v. Celanese Corp.*, 16 *N. J.* 208 (1954)); but it is compensable if it was causally related to the employee's work. *Spindler v. Universal Chain Corp.*, 11 *N. J.* 34 (1952). The burden of proving that the employee's injury was work-connected is on the claimant (*Green v. Simpson & Brown Construction Co.*, 14 *N. J.* 66 (1953)); but the proof may be circumstantial rather than direct and the test is probability rather than certainty. *Spindler v. Universal Chain Corp., supra*, 11 *N. J.*, at *page* 39. Indeed, where the collapse is unwitnessed and the employee's lips are sealed by death, courts throughout the country show understandable readiness to accept meagre showings of compensability. See *Macko v. Herbert Hinchman & Son*, 24 *N. J. Super.* 304, 307

(*App. Div.* 1953); 1 *Larson, Workmen's Compensation Law* 96, 102 (1952).

██ In the instant matter there apparently were no witnesses at the moment of the decedent's collapse, and apart from the attendant circumstances and the inferences therefrom, the pertinent evidence must come largely from the decedent's statements. The decedent's wife testified that her husband told her that all he remembered was that dust came from the machine and he fell to the floor. Since she did not see him in a conscious state until June 27—he had evidently regained consciousness on the evening of June 26—her expression of his statement constituted hearsay which did not come within any now recognized exception to the hearsay rule. Though under the statute hearsay need not be excluded in a proceeding before the Workmen's Compensation Division (*R. S.* 34:15–56), our cases hold that the ultimate compensation award must nevertheless be rested on legally competent evidence. *Helminsky v. Ford Motor Co.,* 111 *N. J. L.* 369, 373 (*E. & A.* 1933); *Andricsak v. National Fireproofing Corp.,* 3 *N. J.* 466, 469 (1950). It may be noted that *Rule* 62(4) of the proposed *Uniform Rules of Evidence* would broadly permit the admission of any decedent's statement under proper safeguards; Professor McCormick has pointed out that this change "is especially needed in claims for accident insurance or Workmen's Compensation when the victim was alone at the time of injury, but has stated the circumstances later to family and friends." See *McCormick, "Hearsay,"* 10 *Rutgers L. Rev.* 620, 624 (1956).

The record is somewhat obscure as to what statements were actually made by the decedent. Statements made by him upon regaining consciousness and before real opportunity for reflection and fabrication, may well be admissible within the so-called *res gestae* exception to the hearsay rule. See *Demeter v. Rosenberg,* 114 *N. J. L.* 55 (*Sup. Ct.* 1934); *Slayback Van Order Co. v. Eiben,* 115 *N. J. L.* 17 (*Sup. Ct.* 1935); *Atamanik v. Real Estate Management, Inc.,* 21 *N. J. Super.* 357 (*App. Div.* 1952); *Kelley v. Hicks,*

9 *N. J. Super.* 266, 269 (*App. Div.* 1950); *cf. Wetherbee v. Safety Casualty Company,* 219 *F. 2d* 274 (5 *Cir.* 1955). And statements made by him at any time to his treating physician as to his present and past symptoms and feelings may well be admissible under another recognized exception to the hearsay rule. See *State v. Gedicke,* 43 *N. J. L.* 86, 88 (*Sup. Ct.* 1881); *State v. Gruich,* 96 *N. J. L.* 202, 204 (*E. & A.* 1921); *Meaney v. United States,* 112 *F. 2d* 538 (2 *Cir.* 1940); *Ferne v. Chadderton,* 375 *Pa.* 302, 100 *A. 2d* 854 (1953); 6 *Wigmore, Evidence* §§ 1720, 1722 (1940). In the *Gedicke* case Justice Scudder noted that where the object of a medical examination is to care for the patient's health there is the strongest inducement for him to tell the truth, and that if he is influenced "by any other consideration the jury must determine the weight of the evidence, as in other cases." In the *Gruich* case Justice Swayze quoted approvingly from *Roosa v. Boston Loan Co.,* 132 *Mass.* 439 (1882), where the Supreme Judicial Court of Massachusetts remarked that a treating physician could testify as to his patient's statements with respect "to his condition, symptoms, sensations and feelings, both past and present." And in the *Meaney* case Judge Learned Hand cited the *Roosa* case and pointed out that the reasoning which supports the admission of declarations of present symptoms also supports the admission of declarations of past symptoms. As he put it: "A patient has an equal motive to speak the truth; what he has felt in the past is as apt to be important in his treatment as what he feels at the moment." [112 *F. 2d* 540.]

If the decedent told Dr. Stellar that his collapse occurred after "a sudden coughing spell while at work" the statement could be received by the deputy director as a declaration of a past symptom or sensation. It was relevant to the physician's diagnosis and treatment and the circumstances would abundantly import trustworthiness. While it is true that under the present state of our case law the statement could not legally establish the manner and place of injury (*Andricsak v. National Fireproofing Corp., supra*), it could legally establish that there had been a coughing incident

immediately prior to the collapse; the rest may be a matter of fair inference from the coupling of the coughing incident with the presence of dust and the other pertinent circumstances which have been duly established. *Cf. Bohan v. Lord & Keenan, Inc.,* 98 *N. H.* 144, 95 *A.* 2d 786 (1953).

The hospital records are admissible in evidence (*N. J. S.* 2A:82–34 *et seq.*), though they may not generally serve to establish the manner and place of injury through hearsay declarations which would not be admissible under one or more of the recognized exceptions to the hearsay rule. *McCormick, Evidence* 611 (1954). See *Williams v. Alexander,* 309 *N. Y.* 283, 129 *N. E.* 2d 417 (1955); *Brown v. Saint Paul City Ry. Co.,* 241 *Minn.* 15, 62 *N. W.* 2d 688, 44 *A. L. R.* 2d 535 (1954); *Hale, "Hospital Records as Evidence,"* 14 *So. Calif. L. Rev.* 99, 106 (1941); Note, 25 *Fordham L. Rev.* 353, 355 (1956); Note, 48 *Colum. L. Rev.* 920, 928 (1948); Note, 23 *Texas L. Rev.* 178, 187 (1944); Annot., 44 *A. L. R.* 2d 553 (1955). But see *Melton v. St. Louis Public Service Co.,* 363 *Mo.* 474, 251 *S. W.* 2d 663 (1952); *Walls v. Delaware Coach Co.,* 5 *Terry* 283, 44 *Del.* 283, 58 *A.* 2d 689 (*Super. Ct.* 1948). *Cf. Macko v. Herbert Hinchman & Son, supra; Devlin v. Surgent,* 18 *N. J.* 148 (1955). The St. Joseph's Hospital record expressly set forth, in Dr. Stellar's handwriting, that there had been a "sudden onset 36 hours ago when coughing dust at place of work," but we do not know where Dr. Stellar received his information or the attendant circumstances. His direct examination indicated that he had obtained it from the decedent, but his cross-examination indicated that it may well have come from other sources. It seems to us that this important issue should not be permitted to remain in doubt; it may be clarified by having the Division take additional testimony and make appropriate findings thereon. Dr. Stellar should be carefully examined as to the source of his information and the circumstances under which it was received, and the parties should have full opportunity to introduce before the Division any additional testimony which may shed further light as to whether there

was a causal connection between the decedent's work and his collapse at the respondent's plant on the morning of June 25, 1953. The power of appellate tribunals to remand causes is now beyond question; it may be exercised wherever, as here, the conscientious search for truth and justice so dictates. *Laba v. Newark Board of Education,* 23 *N. J.* 364, 382 (1957); *Minter v. Bendix Aviation Corporation,* 24 *N. J.* 128 (1957).

Reversed and remanded for further proceedings in the Workmen's Compensation Division.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, BURLING, JACOBS and WEINTRAUB—5.

*For affirmance*—Justice OLIPHANT—1.