**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1529-19

NANCY L. HOLM,
individually and as
Administratrix of the
Estate of CHRISTOPHER R.
FRIEDAUER, deceased,

     Plaintiff-Appellant,

v.

DANIEL M. PURDY,

     Defendant-Respondent.

_____

        Argued February 10, 2021 – Decided July 16, 2021

        Before Judges Geiger and Mitterhoff.

        On appeal from the Superior Court of New Jersey, Law
        Division, Monmouth County, Docket No. L-0098-17.

        Ryan Milun argued the cause for appellant (The Killian
        Firm, PC, attorneys; Ryan Milun, on the briefs).

        Michael J. Dunn argued the cause for respondent.

PER CURIAM

Plaintiff Nancy L. Holm, individually and as Administratrix of the Estate of Christopher R. Friedauer (Christopher),[1] deceased, brought this professional negligence action against defendant Daniel M. Purdy, a licensed insurance broker who procured insurance for Holmdel Nurseries, LLC (Holmdel or the LLC), including workers' compensation coverage. Plaintiff alleged Purdy was negligent (count one) and breached his fiduciary duty (count two) by "negligently advising or failing to advise [Christopher] regarding insurance that was clearly and obviously necessary to protect [Christopher], his family, and his business in the event of [Christopher's] injury or death, and for procuring grossly inadequate coverage." Plaintiff appeals from a May 10, 2019 order denying her cross-motion for summary judgment and a November 20, 2019 order granting Purdy's motions for involuntary dismissal under Rule 4:37-2(b) and judgment at trial under Rule 4:40-1. We affirm in part, reverse in part, and remand for retrial.

Until 2012, Christopher's father, Robert Friedauer (Robert), and uncle, Walter Friedauer (Walter), each owned a fifty percent interest in Holmdel, a family-run nursery and landscaping business. Christopher and his brother Michael Friedauer (Michael) were long-time employees of Holmdel. As

---

[1]  Because the members of the LLC share the same surname, we use their first names for ease of reading and mean no disrespect.

employees, Christopher and Michael were covered for work-related injuries or death under Holmdel's workers' compensation policy (the Policy).

In 2011, Christopher and Michael began discussing a buy-out of their uncle Walter's fifty percent ownership of Holmdel. Soon after, Robert, Walter, Michael, and Christopher agreed that Michael and Christopher would purchase Walter's fifty percent ownership of Holmdel, with each owning twenty-five percent. The agreement was finalized in 2012. Following the buyout, Robert retained a controlling fifty percent interest in Holmdel.

Purdy served as the longtime insurance agent for Holmdel. He met with Robert annually to review Holmdel's insurance coverage needs. Purdy secured numerous insurance coverages for Holmdel each year, including the mandatory workers' compensation coverage for employees.

In contrast to employees, members of an LLC are not covered under the Policy unless they elect to opt in for such coverage at extra cost. Every member of the LLC must opt in for such coverage for any member to be eligible for workers' compensation benefits. The decision to opt in must be made at the inception or renewal of the policy. The substantial premium for opting in is based on the salary and earnings of all the members of the LLC.

A-1529-19

Robert was charged with securing Holmdel's insurance coverage. Prior to 2012, Purdy advised Robert that members of the LLC were not eligible for workers' compensation benefits unless every member opted in for that coverage at additional cost. From 2002 to 2012, Robert declined to opt in for workers' compensation coverage for Holmdel's members.

At Holmdel's annual meeting in 2012, Purdy discussed insurance coverage with Holmdel's members. Purdy learned that Christopher and Michael, who were both present at the meeting, had become members. Michael told Purdy that he wanted "to make sure that [he and Christopher] were protected now that [they] were owners." Purdy never notified Michael or Christopher of their right to elect worker's compensation coverage as LLC members and failed to inform them they were no longer covered under the Policy.

There was no evidence about what else Christopher said or asked Purdy during the meeting. Apparently, the brothers did not discuss workers' compensation eligibility with each other or Robert before Christopher's death.

In 2015, Christopher died shortly after a slip and fall accident while working. Because the members had not opted in for coverage, Christopher was not eligible for workers' compensation benefits relating to his accident. Christopher was survived by his wife, Nancy L. Holm, and two young children.

A-1529-19

On January 6, 2017, plaintiff filed a professional negligence action against Purdy. The complaint alleged:

> 10. On February 15, 2015, [Christopher] was tragically killed at age [thirty-six] in an accident while on the job for Holmdel Nurseries. [Christopher] was in the process of entering a truck to conduct snowplowing operations, when he apparently slipped and hit his head on the pavement. Although he had no apparent signs of injury, [Christopher] passed away several hours later as a result of his fall.

In his answer, Purdy provided the following response to this allegation: "Denied as stated. Answering defendant is without knowledge or information sufficient to form a belief as to the truth of the averments of paragraph [ten] and denies same and demands proof thereof at the time of trial." Purdy also asserted a separate defense that plaintiff failed to state a claim upon which relief could be granted. The answer did not expressly deny that Christopher's death was caused by a work-related accident.

Following the close of discovery, the parties cross-moved for summary judgment. In her oral decision, the judge noted that "[w]hether a defendant owes a legal duty is a question of law for the [c]ourt to decide." "Here, there is no dispute that there was a duty. The issue seems to be whether that duty was breached and whether there exists a genuine issue of material fact . . . ."

5

The parties disputed "the nature of the relationship" and the communications between Purdy and Christopher. In addition, the judge found there were material facts in dispute regarding the discussions between Purdy and Robert concerning workers' compensation coverage for members.

After considering the opposing expert reports, the judge further found there was a genuine issue of material fact as to whether Purdy met industry standards and satisfied the duties he owed. The judge denied both motions, concluding these genuine issues of material fact required credibility determinations by a jury, as did whether Purdy's actions rose to the level of negligence or gross negligence.

After Christopher's death, the remaining members of the LLC opted in for workers' compensation coverage. A decision was subsequently made to opt out of the coverage and replace it with disability policies.

The trial commenced in November 2019. Plaintiff testified on her own behalf and called Robert, Michael, Paul Amoruso, an insurance brokerage expert, and June Toth, a damages expert, as witnesses. Purdy testified on his own behalf and James Klagholz testified without objection as an expert in the field of insurance agency and brokerage relating to commercial insurance policies, including workers' compensation coverage.

A-1529-19

On the third day of trial, plaintiff sought to introduce the autopsy report as evidence that Christopher suffered a work-related injury. The preliminary autopsy report contained the following pertinent findings:

EVIDENCE OF RECENT TRAUMATIC INJURY: No body surface or internal traumatic injuries are identified. It should be noted, there is no subgaleal hemorrhage. There is no cranial fracture. There is no epidural, subdural or subarachnoid hemorrhage. The brain parenchyma is intact throughout showing no contusion or laceration.

There are no intrathoracic or intra-abdominal injuries.

GENERAL DESCRIPTION: No significant findings are noted externally except bluish purple cyanotic facial skin.

The head is unremarkable. The scalp is intact . . . . The ear canals, nostrils and oral cavity are free of hemorrhage. The gums reveal natural dentition.

. . . .

HEAD AND CENTRAL NERVOUS SYSTEM: Reflection of the scalp reveals intact subgaleal soft tissue with no hemorrhage. The cranial bones are intact, showing no fracture. . . . Sectioning of the brain parenchyma reveals mild diffuse congestion and edema. There is no parenchymal hemorrhage, infarct, tumor or any other focal lesion. The cerebellum, pons and medulla are free of hemorrhage. The ventricles contain clear [cerebral spinal fluid].

NECK: No traumatic injuries are identified.

A-1529-19

CHEST:  No traumatic injuries are identified.

The preliminary report stated there was an "[a]lleged history of fall during snow removal" and diagnosis of "post-concussion head injury due to fall on ice." The cause and manner of death were "[p]ending additional studies."  The medical examiner's final report stated:  "Based upon the history/circumstances, investigation reports, autopsy findings, and toxicology findings, the report was amended" to reflect the cause of death as "[h]ead injury with concussion due to fall" and the manner of death as an "accident."

Plaintiff attempted to introduce the autopsy report after Purdy requested an offer of the proof plaintiff would rely upon to establish that a compensable work-related injury caused Christopher's death.  The court engaged in the following analysis:

> In a malpractice action, a plaintiff must prove that the damages suffered were suffered as a result of the malpractice.  Hence, the plaintiff must not only prove the breach of the standard of care to establish liability, but also the alleged resulting harm was caused by that breach.
>
> Given that the resulting harm centers on the compensability of the alleged injury, the plaintiff has the burden to establish that compensability.
>
> To establish that compensability, the parties agree that the alleged injury must be work related injury.  And that the work[-]related injury ultimately

8

led to the death that forms the basis of the alleged damages, the loss, death and/or survivor benefits.

The judge noted Purdy argued that "plaintiff had not disclosed or provided any medical evidence" to establish: (a) "the injury, or injuries, or conditions suffered by [Christopher]"; (b) "that these injuries and/or conditions were the cause of death"; and (c) "that the cause of the death was the work-related injury."

In response, plaintiff contended that Purdy should have raised the defense that Christopher's injuries were not a compensable injury under the Act as an affirmative defense. She argued that Purdy's answer "did not include anything about the injury to [Christopher] not being work related." Purdy claimed, however, that his position—that plaintiff failed to meet her burden of proof—did "not fall within the ambit of an affirmative defense, but rather [fell] squarely within the obligations of the plaintiff to prove each and every element of [her] claim."

The judge noted that Purdy asserted an affirmative defense that the complaint failed to state a cause of action upon which relief could be granted. She found defendant's position was not an affirmative defense but simply a demand of the proofs upon which plaintiff would rely.

The judge further found that "plaintiff ha[d] not provided exceptional circumstances by which the autopsy report should be provided at this late hour."

9

She concluded that aside from the discovery violation, the autopsy report did not "overcome the evidentiary hurdles." First, as to authentication, the autopsy report was not a certified copy signed by the custodian of the report.

Second, for the autopsy report "to be admissible, the opinions of the medical examiner would have to be excised." If that were done, it "would then simply leave some findings on examination, which . . . would be beyond the ken of an average juror to interpret."

Third, even if the autopsy report were admitted, it "would not provide the jury with any probative evidence absent medical testimony to explain the findings in that report that would be helpful to the juror." The assistant medical examiner who performed the autopsy was not named as an expert or called as a witness. Plaintiff offered no witnesses with the qualifications, skill, and knowledge to explain or interpret the findings in the autopsy report even if the court admitted the report after redacting the medical examiner's opinions.

Fourth, the preliminary report listed certain findings and opinions, but the opinions were not conclusive and were subject to "additional studies." The final report simply indicated that the cause of death was a head injury with concussion due to fall and the manner of death was an accident based upon the history, circumstances, investigation reports, autopsy, and toxicology findings. The

judge found that the final report failed to provide "the whys and wherefores" for its conclusions.

Lastly, the judge addressed the prejudice Purdy would suffer if the autopsy report, which was not provided in discovery despite plaintiff receiving it in 2015, were admitted in evidence. She found that Purdy had no opportunity to rebut its findings by having it reviewed by his own expert.

Once plaintiff rested, Purdy moved for involuntary dismissal pursuant to Rule 4:37-2(b). The court reserved judgment. After the defense rested, Purdy moved for judgment at trial under Rule 4:40-1. The court granted both defense motions on November 12, 2019, at trial, and issued a November 20, 2019 order.

Purdy, who served as the insurance agent for Holmdel since 2002, procured several policies for Holmdel, including the workers' compensation coverage required by statute. He also procured coverage for Robert, Walter, Christopher, and Michael on their homes and autos. This was usually done by telephone. Purdy spoke with Christopher five or six times over the course of his thirteen-year relationship with Holmdel, and these conversations typically occurred "while Purdy was meeting with the LLC owners regarding the insurance" and business needs. Purdy's interactions with Christopher were

"limited" and related primarily to the procurement of "personal coverage to Christopher."

Robert "was the person in charge of the insurance." Purdy had a longstanding relationship with Robert and met with him at least annually to review Holmdel's insurance coverage, including its workers' compensation policy. Robert was responsible for providing information to Purdy regarding the LLC's employees and "received the annual audits and reviewed the insurance policy renewals" for the LLC. Christopher and Michael were not involved in the audits. When Michael became an owner, he began participating in the insurance renewal meetings in a limited capacity.

Prior to becoming members of Holmdel, Christopher and Michael were covered by workers' compensation insurance as employees of the company. When Robert and Walter were the sole owners of Holmdel, they had at one point opted in for workers' compensation coverage but later opted out of such coverage because Robert was dissatisfied with the process. Robert knew that owners of LLCs needed to opt in for coverage if they wished to be covered. However, Robert was unaware that each LLC member needed to opt in for there to be coverage. Robert assumed that Christopher and Michael still had workers' compensation coverage when they became LLC members because they had

A-1529-19

coverage as employees of the LLC. Although Robert, Michael, and Christopher never asked Purdy about workers' compensation insurance coverage, all three told Purdy that they wanted "to be protected."

No one witnessed Christopher fall. Michael testified that when he saw his brother on the day of the accident, "his whole back was completely covered in snow, his hat, his back, and he just didn't look like himself. He was just completely out of it." When Michael asked his brother what happened, Christopher responded, "I can't get [my truck] running. I don't know what's wrong with it. I was working on it. I slipped. I fell down. I hit my head. I hit my head so hard I saw stars." Robert also testified that Christopher told them that he had fallen while working on a truck and hit his head so hard he saw stars.

Later that same day, Michael went to look for Christopher once he realized his brother was taking longer than usual to return. Michael found his brother seemingly "dead in the truck." He was later pronounced dead at the hospital.

In support of his motion, Purdy argued that he only owed a legal duty to Holmdel to provide workers' compensation coverage for its employees, not to Christopher once he became a member. He also argued that plaintiff presented no medical evidence to establish the cause of Christopher's death and whether it

13

was work-related, and thereby failed to prove a compensable injury under the Workers' Compensation Act, (the Act), N.J.S.A. 34:15-1 to -128.

The judge found that Purdy met his duty to inform the LLC about workers' compensation coverage and noted that Robert, who "managed insurance coverage for the LLC," was aware that "members of an LLC are not covered unless they opt in." Christopher, as an individual, could not procure workers' compensation insurance for the LLC because the Act requires the employer to procure such coverage for its employees.

The judge concluded that the LLC was charged with knowledge through Robert, who consciously opted out of workers' compensation as a member and owner of the LLC. Robert decided to opt out in 2002 and continued to opt out for over ten years.

The judge rejected plaintiff's claim that an insurance broker duty extended beyond the LLC to its individual members, even if the harm is foreseeable. She concluded that extending the duty to individual members was inappropriate because "[a]n individual member may have a different interest [than] another member and both may have different interests [than the] LLC itself." For example, an insurance policy with a lower premium may be beneficial to the LLC but not provide coverage for its members.

A-1529-19

The judge further explained that even if a special relationship existed to justify the extension of Purdy's duty to Christopher as a member of the LLC, plaintiff still needed to prove that the breach of the duty proximately caused the loss. The judge found there was no evidence that Christopher would have opted in for workers' compensation coverage.

The judge also found the record lacked evidence of who possessed the power to make decisions concerning workers' compensation insurance for LLC members—whether such decisions required a majority vote or unanimity. Also lacking was evidence concerning the LLC's operating agreement to determine whether each member could bind the company and make decisions on its behalf. The judge concluded that, even if Michael and Robert would have opted in for coverage had they been given the option by Purdy, plaintiff presented no evidence that such action would have been sufficient to bind the LLC.

The judge rejected plaintiff's claim that a special relationship existed between Christopher and Purdy, even though Purdy procured homeowner's and auto insurance coverage for Christopher, noting their interactions were limited and usually occurred by telephone. The judge further noted that the LLC and Robert are not plaintiffs.

A-1529-19

The judge further found that plaintiff failed to prove damages because plaintiff failed to prove that Christopher suffered a compensable injury, a requirement to receive death benefits. The court noted the lack of any medical evidence concerning the injury. Plaintiff did not present any expert medical testimony to interpret the medical examiner's report, any EMT records, or any hospital records. Without expert testimony or medical evidence of an injury, the judge concluded she could not reach the issue of whether the injury was a work-related, compensable injury.

Lastly, the judge found Purdy acted within the scope of his duties and obtained the requested coverage. Purdy regularly met with Robert, the LLC's controlling member, to discuss workers' compensation coverage, and he preferred lower premiums.

On appeal, plaintiff argues:

> I. IN HOLDING THAT PURDY HAD NO DUTY TO CHRISTOPHER, THE TRIAL COURT INEXPLICABLY IGNORED THE FACT THAT PURDY WAS CHRISTOPHER'S PERSONAL INSURANCE BROKER, AND THE POTENTIAL BENEFICIARY OF NURSERIES' WORKERS' COMPENSATION COVERAGE.
>
> II. PURDY[] VIOLATED THE WORKERS' COMPENSATION STATUTE BY FAILING (A) TO PROVIDE NOTICE OF THE ELECTION OF COVERAGE IN EACH WORKERS'

16

COMPENSATION APPLICATION AND (B) TO PROVIDE THE WORKERS' COMPENSATION ELECTION FORM

III. THE TRIAL EVIDENCE WAS MORE THAN ENOUGH TO ESTABLISH A COMPENSABLE INJURY UNDER THE NEW JERSEY WORKERS' COMPENSATION STATUTE.

IV. THE TRIAL COURT ERRED IN PERMITTING "TRIAL BY AMBUSH," BY ALLOWING PURDY TO CONTEST CAUSATION DESPITE HAVING CONCEDED THE ISSUE BEFORE TRIAL.

V. AFTER ALLOWING PURDY TO ENGAGE IN TRIAL BY AMBUSH, THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY REFUSING TO ALLOW CHRISTOPHER TO INTRODUCE RELEVANT EVIDENCE TO REBUT THE BELATEDLY[]ARGUED CAUSAL CONNECTION ISSUE, INCLUDING THE ADMISSION OF CHRISTOPHER'S AUTOPSY REPORT.

Plaintiff contends the court erred in denying her cross-motion for summary judgment by concluding Purdy owed no duty to Christopher, thereby ignoring the fact that Purdy was Christopher's personal insurance broker, and Christopher asked Purdy to advise him on the insurance implications of becoming a member of the LLC. We disagree.

We review a ruling on summary judgment de novo, applying the same standard as the trial court. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395,

17

405 (2014). "The trial court's conclusions of law and application of the law to the facts warrant no deference from a reviewing court." W.J.A. v. D.A., 210 N.J. 229, 238 (2012) (citing Manalaplan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"Our court rules require summary judgment to be granted when the record demonstrates that 'there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment as a matter of law.'" Davis, 219 N.J. at 405-06 (quoting R. 4:46-2(c)). The court considers "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). "In applying that standard, a court properly grants summary judgment 'when the evidence is so one-sided that one party must prevail as a matter of law.'" Davis, 219 N.J. at 406 (quoting Brill, 142 N.J. at 540). Thus, both the trial and appellate court must "review the motion record against not only the elements of the cause of action but also the evidential standard governing that cause of action." Bhagat v. Bhagat, 217 N.J. 22, 40 (2014).

"To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). "[W]hether a defendant owes a legal duty is generally a question of law for the court to decide." Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 502 (1997) (citing Carvalho v. Toll Bros. & Devs., 143 N.J. 565, 572 (1996)).

"[A]n insurance broker owes a duty to the insured to act with reasonable skill and diligence in performing the services of a broker." Carter Lincoln-Mercury, Inc. v. EMAR Group, Inc., 135 N.J. 182, 189 (1994). See also Rider v. Lynch, 42 N.J. 465, 476 (1964) ("When engaged by a member of the public to obtain insurance, the law holds him to the exercise of good faith and reasonable skill, care and diligence in the execution of the commission."). An insured can establish a prima facie case of negligence against an insurance broker if: (1) the broker neglects to procure the insurance; (2) the broker secures a policy that is either void or materially deficient; or (3) the policy does not provide the coverage the broker undertook to supply. President v. Jenkins, 180 N.J. 550, 569 (2004). See also Aden v. Fortsh, 169 N.J. 64, 79 (2001) (if a broker "neglects to procure the insurance or if the policy is void or materially

19

deficient or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby") (quoting Rider, 42 N.J. at 476); Restatement (Second) of Agency, § 401 (Am. Law Inst. 1957) ("An agent is subject to liability for loss caused to the principal by any breach of duty.").

Here, in denying the summary judgment motions, the judge found there were genuine issues of material fact for a jury to determine, including disputed communications and credibility. The facts regarding whether the duty to inform and advise as to workers' compensation coverage flowed to Christopher remained in dispute. The parties disputed the following issues: (1) "the nature of the relationship [between Christopher and Purdy] and to what extent that relationship bears upon the obligations of" Purdy; (2) the actual discussions between Christopher and Purdy; (3) "whether . . . the level of communication with [Christopher] in this matter was sufficient"; and (4) Purdy's communications with the LLC through Robert or during other meetings in 2012. These genuine issues of material fact precluded granting summary judgment to plaintiff because the court was unable to determine whether Purdy's duty of care extended to Christopher. Clohesy, 149 N.J. at 502 (citing Carvalho, 143 N.J. at 572).

We next address plaintiff's argument that the court erred in granting Purdy's motions for involuntary dismissal and judgment at trial because the testimony was more than sufficient to establish Purdy's duty and demonstrated that he "was the longtime insurance broker for [the LLC] and its members, including Christopher." Relying on Carter Lincoln-Mercury, plaintiff contends that Purdy "owed a duty to Christopher both individually and as a member of [the LLC]." She alleges that Purdy "violated the workers' compensation statute by failing (A) to provide notice of the election of coverage in each workers' compensation application and (B) to provide the workers' compensation election form." Plaintiff argues this alleged violation of the workers' compensation statute was evidence of negligence.

After plaintiff rests, the defendant "may move for a dismissal of the action or of any claim on the ground that upon the facts and upon the law the plaintiff has shown no right to relief." R. 4:37-2(b). The "motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." Ibid. The defendant does not waive the right to offer evidence if the motion is denied. Ibid. The defendant may also move for judgment at the close of all the evidence or after plaintiff rests. R. 4:40-1. The

21

same evidential standard governs motions for judgment. <u>Verdicchio v. Ricca</u>, 179 N.J. 1, 30 (2004).

In <u>Smith v. Millville Rescue Squad</u>, the Court summarized the standard of review of motions for involuntary dismissal and for judgment at trial:

> In reviewing a motion for involuntary dismissal under <u>Rule</u> 4:37-2(b) or a motion for judgment under <u>Rule</u> 4:40-1, we apply the same standard that governs the trial courts. <u>ADS Assocs. Grp. v. Oritani Sav. Bank</u>, 219 N.J. 496, 511 (2014); <u>Frugis v. Bracigliano</u>, 177 N.J. 250, 269 (2003). Both motions are governed by "the same evidential standard: 'if, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied[.]'" <u>Verdicchio</u>, 179 N.J. at 30 (quoting <u>Estate of Roach v. TRW, Inc.</u>, 164 N.J. 598, 612 (2000)). The motion should only "be granted where no rational juror could conclude that the plaintiff marshaled sufficient evidence to satisfy each prima facie element of a cause of action." <u>Godfrey v. Princeton Theological Seminary</u>, 196 N.J. 178, 197 (2008).
>
> [225 N.J. 373, 397 (2016) (alteration in original).]

As with summary judgment motions, the court must determine whether the evidence is "so one-sided that one party must prevail as a matter of law." <u>Frugis</u>, 177 N.J. at 269 (quoting <u>Brill</u>, 142 N.J. at 536). Like the trial court, an

appellate court is not concerned with the weight, worth, nature, or extent of the evidence. Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969).

"A limited liability company is an entity distinct from its members." N.J.S.A. 42:2C-4(a). See also Touch of Class Leasing v. Mercedes-Benz Credit of Canada, Inc., 248 N.J. Super. 426, 441 (App. Div. 1991) ("[A] corporation is an entity separate and distinct from its principals."). Here, no claim was brought by the LLC since workers' compensation benefits are paid to the injured employee or member that opted in for the coverage.

Applying these principles to the evidence adduced at trial, we reverse the trial court's decision to grant defendant's motions for involuntary dismissal under Rule 4:37-2(b) and for judgment under Rule 4:40-1.

The Act was amended to allow members of an LLC, "who actively perform services on behalf of the" LLC, to be "deemed an 'employee' of the" LLC "for purposes of receipt of benefits and payment of premiums pursuant to this chapter, if the" LLC "elects, when the [LLC's] workers' compensation policy" "is purchased or renewed, to obtain coverage for the" LLC's members. N.J.S.A. 34:15-36. "[T]he election may only be made at purchase or at renewal and may not be withdrawn during the policy term." Ibid. For any member of an LLC to opt in for workers' compensation coverage, all members must do so.

38 <u>N.J. Practice, Workers' Compensation Law</u> § 3.4 at 35 (Jon L. Gelman) (3d ed. 2000, 2020 Supplement).

Plaintiff contends that the trial court erred in concluding that Purdy only owed a duty to the LLC, which suffered no damages because of the lack of coverage. We agree.

N.J.S.A. 34:15-36 imposes a non-waivable duty on an insurance broker to advise new members of an LLC of the availability of workers' compensation coverage and the right to elect to opt in for such coverage. Indeed, the statute requires every workers' compensation insurance application to "include notice, as approved by the Commissioner of Banking and Insurance, concerning the availability of workers' compensation coverage for . . . [LLC] members or partners." N.J.S.A. 34:15-36. The application must also "contain a notice of election of coverage and shall clearly state that coverage for . . . [LLC] members and partners shall not be provided under the policy unless the application containing the notice of election is executed and filed with the insurer or insurance producer." <u>Ibid.</u>

Here, Purdy failed to provide Michael and Christopher, the new LLC members, with notice as required under N.J.S.A. 34:15-36 and failed to inform them that they were no longer covered. Robert's prior experience of opting in

and out of workers' compensation coverage as a member did not serve to advise, constructively or otherwise, Christopher and Michael about the change in coverage and their right to elect to opt in for such coverage. Without providing Michael and Christopher with notice, the new members—who presumably were not knowledgeable regarding the change in coverage upon becoming members of the LLC—would not have been able to make an informed decision.

In addition, after Michael and Christopher became members of the LLC, they both met with Purdy in a 2012 to discuss insurance renewal and to "make sure that [they] were protected . . . ."[2] During the 2012 meeting, the parties did not specifically discuss workers' compensation coverage, but Michael testified that he and Christopher informed Purdy they wanted protection. During his testimony, Michael specifically stated that he "tried to give [Purdy] as much information as possible just to make sure [they] were protected."

Giving plaintiff "the benefit of all inferences which can reasonably and legitimately be deduced" from the evidence presented, a rational juror could conclude that Michael and Christopher sought protection during the 2012

---

[2] Although Purdy testified that Christopher did not attend the 2012 meeting, we "accept[] as true all the evidence which supports [plaintiff's] position" and accord plaintiff "the benefit of all inferences which can reasonably and legitimately be deducted therefrom . . . ." Smith, 225 N.J. at 397 (quoting Verdicchio, 179 N.J. at 30).

renewal meeting and Purdy negligently failed to inform them about the change in workers' compensation coverage. Smith, 225 N.J. at 397 (citations omitted). We conclude that there was sufficient evidence presented to require submission of this issue to the jury.

We next address plaintiff's argument that the evidence presented established that Christopher's death was a compensable injury under the Act. Plaintiff argues that the burden of proof is construed liberally in favor of a workers' compensation claimant and medical evidence of causation is not required, especially where the cause of death is obvious.

The Act provides a benefit to the dependents of an employee whose death resulted from a work-related injury, illness, or medical condition. N.J.S.A. 34:15-13(a), (h). "Dependent" is defined by the Act to include the deceased employee's wife and children under eighteen. N.J.S.A. 34:15-13(f).

"To succeed in an action against an insurance broker, the plaintiff must prove that in addition to being negligent, the broker's negligence was a proximate cause of the loss." Harbor Commuter Serv., Inc. v. Frenkel & Co., 401 N.J. Super. 354, 368 (App. Div. 2008) (citing Regino v. Aetna Cas. & Sur. Co., 200 N.J. Super. 94, 99 (App. Div. 1985)). New Jersey has adopted the substantial factor test, which holds a tortfeasor liable if his "negligent conduct

was a substantial factor in bringing about the injuries . . . ." Conklin v. Hannoch Weisman, 145 N.J. 395, 419 (1996) (quoting Brown v. United States Stove Co., 98 N.J. 155, 171 (1984)). In cases involving an alleged failure to procure insurance coverage, the measure of damages is "the amount that would have been due under the policy provided it had been obtained." Robinson v. Janay, 105 N.J. Super. 585, 591 (App. Div. 1969) (quoting 43 Am. Jur. 2d Insurance § 174 (1982)).

Generally, proximate cause is an issue for the jury. Miller v. Est. of Sperling, 166 N.J. 370, 386 (2001) (citing Perez v. Wyeth Labs, Inc., 161 N.J. 1, 27 (1999)). However, a court may decide the issue where "no reasonable jury could find that the injuries were proximately caused by the [defendant's conduct]." Vega by Muniz v. Piedilato, 154 N.J. 496, 509 (1998).

An injury is compensable under the Act when it "is caused to an employee by accident arising out of and in the course of his employment . . . ." N.J.S.A. 34:15-1. The right to compensation under the Act is not affected by the negligence of the employee unless the employee was "willfully negligent," ibid., or "the injury or death is intentionally self-inflicted," N.J.S.A. 34:15-7.

A workers' compensation petitioner for has "the burden of proof to establish all elements of his case." Bird v. Somerset Hills Country Club, 309

27

N.J. Super. 517, 521 (App. Div. 1998). A successful petitioner "generally must prove both legal and medical causation when those issues are contested." Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 259 (2003). "[P]roof of medical causation means proof that the disability was actually caused by the work-related event. Ibid. (citing Hone v. J.F. Shea Co., 728 P.2d 1008, 1011 (Utah 1986)). Proof of legal causation means proof that the injury is work connected." Ibid. (citing Kasper v. Bd. of Trs. of Tchrs.' Pension and Annuity Fund, 164 N.J. 564, 591 (2000) (Coleman, J., concurring); In re Lockheed Martin Corp., 786 A.2d 872, 874-75 (N.H. 2001)). "It is the petitioner's burden to establish a causal link between the employment and the [injury]." Kiczula v. Am. Nat'l Can Co., 310 N.J. Super. 293, 303 (App. Div. 1998) (citing Laffey v. Jersey City, 289 N.J. Super. 292, 303 (App. Div. 1996)).

Nevertheless, the Act is social legislation that is liberally construed "to implement the legislative policy of affording coverage to as many workers as possible." Lindquist, 175 N.J. at 258 (quoting Brower v. ICT Group, 164 N.J. 367, 373 (2000)). To that end, the workers' compensation judge "conducting the hearing shall not be bound by the rules of evidence." N.J.S.A. 34:15-56. "The purpose of this section was to simplify the nature of proof that can be offered without regard to technical exclusionary rules of evidence. Thus, hearsay

evidence need not be excluded but the ultimate award must be based on legally competent evidence." Gunter v. Fischer Sci. Am., 193 N.J. Super. 688, 691 (App. Div. 1984) (citing Gilligan v. Int'l Paper Co., 24 N.J. 230, 236 (1957)). "Nonetheless, the doctrine of liberal construction does not extend to 'the evaluation of credibility, or of weight or sufficiency of evidence.'" Lindquist, 175 N.J. at 258 (quoting Oszmanski v. Bergen Point Brass Foundry, Inc., 95 N.J. Super. 92, 95 (App. Div. 1967)).

The trial court found that plaintiff offered no admissible evidence to establish the elements of proximate cause and damages. However, plaintiff's cause of action is based, in part, on whether the death was compensable under the Act. Because this professional liability action results in the proverbial "trial within a trial," Gautam v. De Luca, 215 N.J. Super. 388, 397 (App. Div. 1987), the relaxation of the evidence rules applies to that aspect of this case. Plaintiff is not held to the technical rules of evidence on the issue of compensability under the Act. Gunter, 193 N.J. Super. at 691 (citing Gilligan, 24 N.J. at 236).

In addition, whether medical evidence is required to establish a compensable injury depends upon the complexity of the medical issues. 12 Lex K. Larson, Larson's Workers' Compensation Law, § 128 (rev. ed. 2020).

> In line with the general tendency of administrative law to recognize the expertise of

specialized tribunals, compensation boards may rely to a considerable extent on their own knowledge and experience in uncomplicated medical matters, and in such cases, awards may be upheld without medical testimony or even in defiance of the only medical testimony. Nevertheless, medical testimony is indispensable when the medical question is no longer an uncomplicated one, carrying the factfinders into realms that are properly within the province of medical experts.

[Ibid.]

As explained by this distinguished commentator:

To appraise the true degree of indispensability which should be accorded medical testimony, it is first necessary to dispel the misconception that valid awards can stand only if accompanied by a definite medical diagnosis. True, in many instances it may be impossible to form a judgment on the relation of the employment to the injury, or relation of the injury to the disability, without analyzing in medical terms what the injury or disease is. But this is not invariably so. In appropriate circumstances, awards may be made when medical evidence on these matters is inconclusive, indecisive, fragmentary, inconsistent, or even nonexistent.

. . . .

This view—that in appropriate circumstances medical testimony need not necessarily establish specifically and positively the pathological diagnosis and etiology of a disease or condition—has been accepted by most courts.

[Id. at § 128.02 (footnotes omitted).]

A-1529-19

"Similarly, when the issue is causal connection between an injury and death, medical testimony may be dispensed with" when the injury "occur[s] suddenly as a result of an obvious accident . . . ." Ibid. One reason for this rule is that "lay testimony, including that of the claimant, is of probative value in establishing such simple matters as the existence and location of pain, and sequence of events leading to the compensable condition . . . ." Id. at § 128.04. However, "as the degree of complexity of the medical issue increases, so does the degree of requisite thoroughness and definiteness of diagnosis." Id. at § 128.05.

Another circumstance warranting relaxation of the need for medical testimony is "where there has been an unwitnessed fatal mishap occurring within the time and space limits of the employment, the claimant's standard of proof will be considerably relaxed." Williams v. Corby's Enter. Laundry, 64 N.J. Super. 561, 568 (App. Div. 1960). "[O]ne cannot be expected, in such a situation, to do more than present the more believable of the competing hypotheses." Ibid. In such cases, petitioners are permitted to use circumstantial evidence to satisfy the burden of proof because "[p]robability, and not the ultimate degree of certainty is the test." Verge v. Cnty. of Morris, 272 N.J. Super. 118, 125 (App. Div. 1994) (citing Jochim v. Montrose Chem. Co., 3 N.J.

31

5 (1949)). See also Crotty v. Driver Harris Co., 49 N.J. Super. 60, 71 (App. Div. 1958) (holding where there are no witnesses to an employee's death, courts are satisfied with "scant circumstantial evidence that the accident arose out of and in the course of the employment" (citing Macko v. Herbert Hinchman & Son, 24 N.J. Super. 304, 307-308 (App. Div. 1953))).

In Aladits v. Simmons Co., 47 N.J. 115 (1966), the employee was performing heavy work when he collapsed and died from a heart attack. The Court addressed the evidence of causation required when an unwitnessed death occurs:

> This was an unwitnessed death. No one knows what Aladits was doing or what signs or symptoms he manifested when stricken. It is known that he was in the course of his work, that it was heavy work and that he had been doing it for about four and one-half hours before he collapsed. In such cases causal connection between the work effort and the death must depend upon circumstantial evidence. It is a matter of common knowledge also, that in such cases justice requires a more tolerant appraisal of the evidence supporting the thesis of causation. Although the standard to be met for compensability remains the same, where the 'collapse is unwitnessed and the employee's lips are sealed by death, the courts throughout the country show an understandable readiness' to find the necessary reasonably probable connection on a less formidable quantum of testimony.
>
> [Id. 121-22.]

The Court concluded that "[h]eavy reliance must be placed on the surrounding circumstances, and they must be carefully explored and appraised for the existence of every fact or element which points the way toward or away from work connection."  Id. at 122.

In Coleman v. Cycle Transformer Corp., an employee suffered acute trauma when her hair caught fire when she lit a cigarette during an unpaid lunch break in the company's lunchroom.  105 N.J. 285, 286-87 (1986).  The Court noted the simply worded phrase "arose out of" the employment "has given rise to 'a mass of decisions turning upon nice distinctions and supported by refinements so subtle as to leave the mind of the reader in a maze of confusion.'"  Id. at 290 (quoting Note, "Arising 'out of' and 'in the Course of' the Employment Under the New Jersey Workmen's Compensation Act," 20 Rutgers L. Rev. 599 (1966)).  The Court considered the case to be "relatively straightforward, not encumbered by such distinctions, refinements, or confusion."  Ibid.  We reach the same conclusion in this case.

"The requirement that a compensable accident arise out of the employment looks to a causal connection between the employment and the injury.  It must be established that the work was at least a contributing cause of the injury and that the risk of the occurrence was reasonably incident to the

employment." Ibid. (citing Note, 20 Rutgers L. Rev. at 601). The test is "whether it is more probably true than not that the injury would have occurred during the time and place of employment rather than elsewhere." Ibid. (quoting Howard v. Harwood's Restaurant Co., 25 N.J. 72, 83 (1957)).

This Case does not involve an underlying heart condition or environmental exposure to carcinogens or toxins. Cf. Aladits, 47 N.J. at 125 (heart attack after engaging in prolonged, strenuous manual labor); Szumski v. Dale Boat Yards, Inc., 48 N.J. 401, 405 (1967) (acute myocardial infarction following manual labor on a hot, humid day); Lindquist, 175 N.J. at 249 (firefighter, who was regularly exposed to heavy smoke conditions, developed pulmonary emphysema). Claims based on environmental exposure or heart attacks while performing strenuous physical labor present far more complicated medical causation issues than claims based on trauma. The better view is that workers' compensation claims based on environmental exposure or labor-induced heart attacks require greater medical evidence of a causal connection between the employment and the illness or injury than a claim based on an injury caused by a discrete traumatic event unrelated to any underlying medical condition.

Christopher was injured during a slip and fall on a snowy surface while performing snow removal work for the LLC. The fall occurred during regular business hours on the client's property while trying to start the LLC's truck. Entirely absent is any evidence that his death was related to environmental exposure, an underlying medical condition, or non-work-related trauma.

Plaintiff presented strong circumstantial evidence that the accident caused Christopher's death. This included Michael's testimony that when he saw Christopher on the day of the accident, "his whole back was completely covered in snow, his hat, his back, and he just didn't look like himself. He was just completely out of it." In addition, Michael testified that Christopher told him: "I slipped. I fell down. I hit my head. I hit my head so hard I saw stars."

As we have noted, a "considerably relaxed" burden of proof is applied where "an unwitnessed fatal mishap occurring within the time and space limits of the employment" occurs. Williams, 64 N.J. Super. at 568. Applying this "more tolerant appraisal of the evidence supporting the thesis of causation," Aladits, 47 N.J. at 122, we find that plaintiff presented sufficient circumstantial evidence for a reasonable jury to find by a preponderance of the evidence that the fatal injury "occurred during the time and place of employment rather than elsewhere," Coleman, 105 N.J. at 290 (quoting Howard, 25 N.J. at 83). Because

Christopher's fall was "unwitnessed and [his] lips [were] sealed by death," we conclude plaintiff presented sufficient circumstantial evidence for a reasonable jury "to find the necessary reasonably probable connection on a less formidable quantum of testimony." Aladits, 47 N.J. at 122.

Since plaintiff presented sufficient evidence that Christopher suffered a work-related injury that led to his death, the burden of proof shifted to employer. Kolakowski v. Thomas Mfg. Corp., 88 N.J. Super. 478, 488 (App. Div. 1965).

> It is well settled that where the employer disputes the connection of the disability and the work injury after petitioner has, by a preponderance of the credible proofs, shown such relation, the burden shifts to the employer to come forward with proof that the disability might be the result of another cause.
>
> [Ibid.]

See also Bird, 309 N.J. Super. at 521 (stating that once the petitioner has established the elements of his case, "the burden to defeat [the] claim and establish contrary facts and legal conclusions exonerating the employer or mitigating liability shifted to the employer" (citations omitted)).

Here, the trial court granted the motions for involuntary dismissal and judgment at trial after Purdy rested. Purdy did not come forward with any evidence that Christopher's injury or death resulted from another cause. Considering the evidential burden imposed on Purdy, which he clearly did not

36

meet, "accepting as true all the evidence which supports [plaintiff's] position," and according plaintiff the benefit of all reasonable inferences, we find that a rational juror could conclude that plaintiff presented "sufficient evidence to satisfy each prima facie element of [the] cause of action." Smith, 225 N.J. at 397 (citations omitted). Consequently, the motions should have been denied. Ibid. (quoting Verdicchio, 179 N.J. at 30).

The trial court erred in granting Purdy's motions for involuntary dismissal and judgment at trial. Ibid. We express no opinion on plaintiff's right to recovery against Purdy. The jury must make that decision. We reverse the order granting the involuntary dismissal and judgment at trial and remand for retrial.

Affirmed in part, reversed in part, and remanded for retrial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION